## SOUTHERN PACIFIC CO. *v.* UNITED STATES.

CERTIORARI TO THE COURT OF CLAIMS.

No. 339.   Argued February 15, 1932.—Decided March 14, 1932.

*Mr. Charles H. Bates* for petitioner.

*Assistant Attorney General Rugg,* with whom *Solicitor General Thacher,* and *Messrs. Claude R. Branch* and *H. Brian Holland* were on the brief, for the United States.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The petitioner operates a railway system comprising certain lines of railroad constructed with the aid of Congressional grants of public lands. During the years 1920–1923, both inclusive, the company, upon transportation requests issued by the War Department, the Navy Department, and the Marine Corps of the United States, transported military prisoners and their guards; officers of the reserve corps traveling to and from encampments under orders of the Secretary of War; members of the nurse corps of the navy; engineer officers of the War Department on duty in connection with river and harbor works and the California Debris Commission; escorts accompanying the remains of deceased soldiers; enlisted men changing station or returning thereto; officers of the army proceeding to their homes after date of their retirement; and stranded enlisted men of the navy traveling

back to their proper stations. In settling petitioner's accounts for transportation so furnished, or in adjusting those previously settled, the United States, through its disbursing officers, made or required petitioner to make certain deductions from the amounts due at regular commercial fares, on the ground that the persons transported were troops of the United States within the meaning of the applicable land grant laws, appropriation acts, and land grant equalization agreements. Payment on this basis was accepted under protest. Suit was instituted in the Court of Claims to recover the amounts deducted, the claim being that none of the persons with respect to whose transportation deduction had been made came within the purview of the statutes and agreements re-quiring the company to carry troops of the United States at reduced fares. The Court of Claims entered judgment for the petitioner on certain items of the claim, but as to most of them found in favor of the United States. A petition for certiorari was filed, and the writ was granted, " limited to the question raised with respect to engineer officers of the War Department in performing duties in time of peace in connection with rivers and harbors improvements and the meetings of the California Debris Commission."

A portion of what is now petitioner's railroad system was granted aid by the Act of July 27, 1866 (14 Stat. 292). The act made the railroad a post route and military road, the charges of which should be subject to such regulations as Congress might impose.[1] With respect

---

[1] Act of July 27, 1866; 14 Stat. 292, § 11. *"And be it further enacted,* That said Atlantic and Pacific Railroad, or any part thereof, shall be a post route and military road, subject to the use of the United States for postal, military, naval, and all other government service, and also subject to such regulations as Congress may impose restricting the charges for such government transportation."

Section 18 of the same act made the same provision respecting the Southern Pacific Railroad, now a part of petitioner's system.

to the line in question the army appropriation acts provide that such railroad " having claims against the United States for transportation of troops and munitions of war and military supplies and property . . . shall be paid out of the moneys appropriated by the foregoing provisions only on the basis of such rate for the transportation of such troops and munitions of war and military supplies and property as the Secretary of War shall deem just and reasonable under the foregoing provision, such rate not to exceed 50 per centum of the compensation of such Government transportation as shall at that time be charged to and paid by private parties to any such company for like and similar transportation; and the amount so fixed to be paid shall be accepted as in full for all demands for such service." [2]

As respects another division of petitioner's system the grant of lands was under the Act of July 25, 1866 (14 Stat. 239, 241), which provided: "And said railroad shall be and remain a public highway for the use of the government of the United States, free of all toll or other charges upon the transportation of the property or troops of the United States." This clause was construed in *Lake Superior & Mississippi R. Co.* v. *United States*, 93 U. S. 442, as conferring only the free use of the roadbed as a highway. Under appropriate legislation following that decision payment of compensation has been made by the United States for transportation of property and troops at fifty per cent. of that charged to private parties. See *United States* v. *Union Pacific R. Co.*, 249 U. S. 354.

---

[2] See the Army Appropriation Act for the year ending June 30, 1921, approved June 5, 1920 (41 Stat. 948, 960). The act contains the following proviso: " That nothing in the preceding provisos shall be construed to prevent the accounting officers of the Government from making full payment to land-grant railroads for transportation of property or persons where the courts of the United States have held that such property or persons do not come within the scope of the deductions provided for in the land-grant Acts: . . ."

The Government and certain railroads have entered into so-called equalization agreements and joint arrangements for military transportation, which provide for deductions additional to the fifty per cent. required by the statutes. The petitioner is a party to these agreements, which have been construed generally as applying to charges for transportation of the same classes of persons to whom the land-grant rates would be applicable. Both the petitioner and the Court of Claims have so treated these agreements and arrangements, and our decision under the statutes may be taken to apply to deductions under these contracts.

This court had occasion in the *Union Pacific* case (*supra*) to pass upon the meaning and scope of the phrase " troops of the United States " as used in the land-grant legislation and in the agreements. What was there said is apposite to expenditures under appropriation acts which use the same phraseology and apply to transportation over petitioner's railroad. The opinion in that case demonstrates that the word " troops " was intentionally used in contradistinction to the words any persons in the service of the United States, or their equivalent, and holds that the word " troops " had, at the time of the passage of the land-grant acts, and ever since has had, an established meaning, namely, " soldiers collectively—a body of soldiers."

Thus the test is whether the person to be transported is one of such a collective body of soldiers. The reduced rate is applicable to a person so described, although he may not be traveling as part of a detachment or moving body of men. *Illinois Central R. Co.* v. *United States,* 62 Ct. Cls. 61; *Chicago, Rock Island & Pacific Ry. Co.* v. *United States,* 58 Ct. Cls. 33. In the *Union Pacific* case it was pointed out that although certain persons were properly characterized as members of the army and as having official relation thereto, they could not, at the time of their transportation, be classified as part of the

troops of the United States, as, for example, a furloughed soldier returning to his station, or retired soldiers en route to their homes after retirement.

The narrow question presented for decision is whether engineer officers cease to be members of the military forces or " troops of the United States " when they are assigned to duty in connection with the improvement of rivers and harbors or the work of the California Debris Commission.

While, as is argued by the United States, river and harbor improvement has in one aspect a bearing upon the military defence of the United States, obviously the principal purpose of this work is the promotion of commerce and transportation, by maintaining and deepening channels, and constructing dikes, jetties, and other works which effect the improvement of navigation generally.

The California Debris Commission was created by the Act of March 1, 1893 (27 Stat. 507), which authorized the appointment of a commission from officers of the corps of engineers of the United States army, whose duty was to mature and adopt a plan or plans to improve the navigability of the Sacramento and San Joaquin rivers in California, deepen their channels, and protect their banks, with a view of preventing encroachment and damage from debris resulting from mining operations, natural erosion, or other causes, and restoring as far as practicable the navigability of the rivers to the condition existing in 1860. The Commission was to permit mining by hydraulic processes, provided this could be done without injury to the navigability of the rivers or to the lands adjacent thereto. Quite evidently this work is of a non-military nature and in the interest of commerce and navigation.

Conceding that engineer officers of the United States army perform a true military function when engaged in work on the military defences of the United States, and, when so engaged form a part of the nation's troops, we

are of opinion that their activity in connection with rivers and harbors work and the California Debris Commission is non-military in character, and falls within the same category as that of many other employees and officials of the War Department, the nature of whose service excludes them from classification as part of the " troops of the United States."

Congress has recognized that such service by engineer officers is non-military. For example, in the Army Appropriation Act for 1930, approved February 28, 1929 (45 Stat. 1349, 1374, 1379), Title I deals with military activities and expenses of the War Department incident thereto. Title II has to do with non-military activities of the War Department, and under the subtitle " Corps of Engineers " makes appropriation for defraying the expenses of the California Debris Commission, and also for the rivers and harbors improvement work of the United States to be carried on under the control and supervision of the Chief of Engineers of the War Department. The Secretary of War, in his annual reports, under the caption " Civil Activities of the Corps of Engineers," mentions rivers and harbors work and that of the California Debris Commission.[3]

The Court of Claims held the view that, as respects engineer officers employed in the capacities mentioned, the Government was entitled to the deduction of fifty per cent. under the terms of the land-grant acts and appropriations pursuant thereto, and other deductions under the equalization agreement and joint military arrangements. For the reasons given, we are of the contrary opinion, and accordingly reverse the judgment of the Court of Claims and remand the cause for further proceedings in conformity herewith.

*Reversed.*

---

[3] Typical reports are that for 1928, p. 25 *et seq.*, and that for 1930, pp. 9, 16, 17.