**UNITED STATES of America, Plaintiff,**

v.

**Edward L. SMITH, Defendant.**

**Crim. A. No. 18088.**

United States District Court
E. D. Illinois.

Sept. 29, 1954.

Clifford M. Raemer, U. S. Atty., Sa-
lem, Ill., John Morton Jones, Asst. U. S.
Atty., Danville, Ill., for plaintiff.

Victor F. Schmidt, Columbus, Ohio,
for defendant.

PLATT, District Judge.

The defendant Edward L. Smith was
indicted for violation of Sec. 462, Title
50 U.S.C.A.Appendix. He waived jury
trial in writing. The selective service
board classified him 1–O (Conscientious
Objector) and ordered him to report for
duty at the Kankakee State Hospital,
Kankakee, Illinois. It was stipulated
that he reported but refused to perform
the work required of him by the board's
order.

The selective service file which was ad-
mitted in evidence, discloses that he was
first classified 1–A on June 14, 1949. His
questionnaire stated that he was a Junior
Pressman employed by the Chicago Her-
ald American and worked an average of
43 hours per week. On January 15,
1951, he was given a physical examina-
tion and was found acceptable for in-
duction. In February, 1951 in a "State-
ment on Dependents" he claimed an
exemption on the ground of dependency,
for the reason that his mother was ill.
After a hearing in March, 1951 no sum-
mary was made of the evidence but Mr.
Smith was granted 60 days postpone-
ment of induction. On June 24, 1951,
Mr. Smith wrote the board stating that
there was no improvement in his moth-
er's condition. The board replied on
June 29, 1951, requesting that Smith's
mother consult another doctor and then
present a statement as to her condition
and probable length of time it would re-
quire for her to regain her normal good
health. The board received no answer
and again on July 27, 1951, wrote Mr.
Smith as to the condition of his mother.
August 1, 1951, Smith replied that his
mother consulted another doctor and he
would forward the report within a week.
He requested that his file be sent to the
appeal board. The doctor's report was
received on August 22, 1951, August 23,
1951, Mr. Smith was classified 3–A for
90 days, which delayed his induction to
November 23, 1951.

November 7, 1951, Mr. Smith request-
ed a conscientious objector's form and
returned it to the board. He again
listed his employment by the Chicago
Herald American. December 6, 1951,
the board classified Mr. Smith 1–O (Con-
scientious Objector).

Mr. Smith notified the board Decem-
ber 16, 1951, he would appeal his 1–O
classification because he was entitled to
a ministerial classification. On June 4,
1952, the appeal board classified Smith
1–O. November 5, 1952, Mr. Smith wrote
the board a letter stating that he was
engaged in ministry work, and that he
also had a secular job to maintain a liv-
ing to support himself and his mother.
January 15, 1953, Mr. Smith again ap-
peared before the board to determine
what civilian assignment he should have.

Smith was again given a physical ex-
amination on May 14, 1953, and was
found acceptable for induction. His re-
port of medical history which he com-
piled himself, listed his occupation as
a Junior Pressman.

He again wrote the board June 18, 1953 that he would become a minister of Jehovah God and be associated with the Watchtower Bible and Tract Society. He had been ordained in the sight of Jehovah God on December 16, 1951. He engaged in door to door ministry. He would be appointed a pioneer or minister on June 22, 1953. September 3, 1953, Mr. Smith was notified by letter that it was the unanimous opinion of the board that Smith's letter of June 18, 1953 would not require the reopening of his case.

Mr. Smith was ordered September 4, 1953 to report for civilian work at Kankakee State Hospital on September 18, 1953. On September 7, 1953, Mr. Smith wrote the board that he was then a full time minister and was able to be recognized as such under the supervision of the Watchtower Bible and Tract Society. September 10, 1952, Mr. Smith was notified by State Headquarters of the Selective Service System his file had been reviewed and he had been classified 1–O. On November 26, 1953, Mr. Smith again wrote the board appealing his classification in favor of 4–D and enclosed a document entitled Pioneer Appointment, dated October 1, 1953.

The defendant maintains he is not guilty as charged in the indictment for the following reasons:

1. There is no summary of the hearing before the board on March 15, 1951, when Mr. Smith appeared before the board.

2. The local board should have continued Mr. Smith's classification 3–A in accordance with Section 1622.30(b) of the regulations.

3. The local board refused to reopen the case of the defendant for reconsideration of his classification as a minister of religion after notice that the defendant was a pioneer minister operating under the direction of the Watchtower Bible and Tract Society, and thereby violated the defendant's rights.

4. The imposition of work in the State Hospital not under control of the federal government is in violation of the Thirteenth Amendment to the Constitution of the United States.

■ The first point made by the defendant that a summary of the March, 1951 meeting was not in the file, does not justify an acquittal under the facts here. The regulation 1624.2(b) at that time provided in part:

"The registrant may present such further information as he believes will assist the local board in determining his proper classification. Such information shall be in writing, *or, if oral, shall be summarized in writing* and, in either event shall be placed in the registrants file." (Emphasis supplied.)

The information regarding the dependency of Mr. Smith's mother, was in writing. The reading of the regulation indicates it was not necessary that there be a summary inasmuch as the evidence was in writing. Cramer v. France, 9 Cir., 148 F.2d 801.

■■ The defendant next maintains his 3–A classification should have been continued. The board after the hearing of March, 1951, granted 60 days extension of time for reason of dependency. It later granted Mr. Smith 3–A classification for 90 days which terminated November 23, 1951. From that time on the registrant requested a 1–O conscientious objector's classification, and a 4–D ministerial exemption. To the very end he never objected to the failure of the board to continue his dependency classification. He never again presented evidence of his mother's disability which was not diagnosed as one which would continue indefinitely. Under such circumstances the board was not in a position to grant a permanent dependency deferment.[1]

---

1. It is true, as defendant contends, that a registrant does not abandon his claim for conscientious objector status by appealing from the denial of his claim for ministerial exemption, Pine v. United States, 4 Cir., 212 F.2d 93; Jewell v.

■ The third objection by the defendant may be disposed of summarily. September 4, 1953, Mr. Smith was ordered to report for induction. After that time the regulation does not require a reopening of his file for a new classification except where the status of the defendant changed as result of conditions over which the registrant has no control. Regulation 32 CFR 1625.2. Furthermore, the information submitted in his letter was insufficient to reopen his case. He did not submit information to apprize the board of any change in his secular work.

■ Mr. Smith finally contends that the order to report at the Kankakee State Hospital was void, for the reasons: (1) the work was not national work; and (2) it amounted to peonage and involuntary servitude and therefore was in violation of the Thirteenth Amendment. Section 456(j) of the Universal Military Training and Service Act, 50 U.S.C.A.

Appendix § 456(j), provides in part as follows:

"Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, * * * if he is found to be conscientiously opposed to participation in * * * noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) (section 454(b) of this Appendix) such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate * * *."

In accordance with the statute, Section 1660.1 of the Selective Service Regulations was promulgated,[2] which defines ci-

---

United States, 6 Cir., 208 F.2d 770, or by any action other than the voluntary submission of a signed, written statement withdrawing the claim, Local Board Memorandum No. 41. However a conscientious objector classification is not a deferment. Classification such as 1–S (Student 'deferred by statute), 11–A (Registrant deferred because of civilian occupation), 11–C (Registrant deferred because of agricultural occupation), 11–S (Registrant deferred because of activity in study) and 111–A (* * * registrant deferred by reason of extreme hardship and privation to dependents) are, by the express terms of the Regulations, deferments from induction and are temporary. Deferments continue only for such time as the particular facts in each case warrant. No, evidence was presented to the board that Mrs. Smith's disability would continue indefinitely, and the board granted the registrant first a sixty-day and later an additional ninety-day deferment. Regulation 1625.1(a) expressly provides: "No classification is permanent." If Mrs. Smith was still incapacitated when this time elapsed it was incumbent on the registrant to present to the board evidence of this fact.

2. "Sec. 1660.1 Definition of appropriate civilian work.
    (a) The types of employment which may be considered under the provisions of sec-

tion 6(j) of Title 1 of the Universal Military Training and Service Act, as amended, to be civilian work contributing to the maintenance of the national health, safety, or interest, and appropriate to be performed in lieu of induction into the armed forces by registrants who have been classified in Class 1–O shall be limited to the following:
    (1) Employment by the United States Government, or by a State, Territory, or possession of the United States or by a political subdivision thereof, or by the District of Columbia.
    (2) Employment by a nonprofit organization, association, or corporation which is primarily engaged either in a charitable activity conducted for the benefit of the general public or in carrying out a program for the improvement of the public health or welfare, including educational and scientific activities in support thereof, when such activity or program is not principally for the benefit of the members of such organization, association, or corporation, or for increasing the membership thereof.
    (b) Except as provided in paragraph (a) (2) of this section, work in private employment shall not be considered to be appropriate civilian work to be performed in lieu of induction into the armed forces by registrants who have been classified in Class 1–O."

vilian work in lieu of induction in the armed forces. Employment in a state hospital is manifestly included. He does not argue, nor could he that work at a state hospital is not civilian work. The statute itself does not require that the work be national but "civilian work contributing to the maintenance of the national health". It is of national importance to every citizen that a sick person be restored to mental or physical health, whether this be accomplished in a state or federal hospital. Obviously a state hospital contributes to the national health.

The former Draft Act[3] provided for conscientious objectors to be assigned to work of national importance under civilian direction. By virtue of this statute the courts held that it included work of value to the nation for the common defense and the general welfare, work of a public nature or to meet the public need.[4] Such work as soil conservation, forestry, tree planting,[5] construction of fire towers, improvements of fire roads and similar work were held to be proper assignments for conscientious objectors.[6] Moreover, it was held it suffices if the work protects the morale of military draftees, or that it releases other men for more directly related services to the military effort. United States v. Brooks, D.C., 54 F.Supp. 995, affirmed, 2 Cir., 147 F.2d 134; United States v. Steinel, D.C., 70 F.Supp. 966. The state authorities direct the work at the state hospital, but the conscientious objector is assigned to the work by authority of federal statute and is required to serve only the length of time prescribed by such statute. Since all of these types of work have been held to be of national importance there is no force to the defendant's argument that the work at the state hospital would not come within the

present statute and contribute to the maintenance of the national health, regardless of whether it was directed by state or federal officials.

▆▆▆▆ This brings me to the proposition as to whether Congress could enact a draft law which would include such civilian work and not violate the Thirteenth Amendment. Congress has the constitutional power to compel Mr. Smith to perform military service in spite of his conscientious objection to military service or his religious convictions. Brooks v. United States, 2 Cir., 147 F. 2d 134; Kramer v. United States, 6 Cir., 147 F.2d 756; Tyrrell v. United States, 9 Cir., 200 F.2d 8, certiorari denied 345 U.S. 910, 73 S.Ct. 646, 97 L.Ed. 1346. Under the conditions which justify a selective service statute, it is the duty of Congress to provide an armed force to preserve the nation. Warren v. United States, 10 Cir., 177 F.2d 596. It is solely by the grace of Congress that Mr. Smith was permitted to do civilian work, rather than required to bear arms. Roodenko v. United States, 10 Cir., 147 F. 2d 752; Richter v. United States, 9 Cir., 181 F.2d 591; United States v. Simmons, 7 Cir., 213 F.2d 901. Congress has allowed Mr. Smith to claim a classification as a conscientious objector thereby excusing him from all work connected in any way with the armed forces. This is in fact a privilege and in lieu of a duty and a necessity to defend our country by bearing arms. The history and purpose of the Thirteenth Amendment indicates it was neither intended to reduce the duties of our citizens, nor to deprive our government of its war powers, nor its power to provide for the National Defense, Butler v. Perry, 240 U.S. 328, 332–333, 36 S.Ct. 258, 60 L.Ed 672. Since a draftee in the armed forces is not forced into involuntary servitude in violation of

3. Selective Training and Service Act of 1940, Sec. 5(g), 50 U.S.C.A.Appendix, § 305(g).

4. United States ex rel. Zucker v. Osborne, D.C., 54 F.Supp. 984, affirmed, 2 Cir., 147 F.2d 135; Heflin v. Sanford, 5 Cir., 142 F.2d 798.

5. Wolfe v. United States, 6 Cir., 149 F.2d 391; Kramer v. United States, 6 Cir., 147 F.2d 756.

6. Weightman v. United States, 1 Cir., 142 F.2d 188.

the Thirteenth Amendment,[7] surely a conscientious objector who asked for and has been granted the privilege of not bearing arms, is not in involuntary servitude when assigned to civilian work. Congress had the power and authority to adopt the statute quoted above, and Section 1660.1 of Selective Service Regulations properly included services at a state hospital.[8]

I conclude that the defendant is guilty as charged.

7. Roodenko v. United States, 10 Cir., 147 F.2d 752; Arver v. United States, 245 U.S. 366, 390, 38 S.Ct. 159, 62 L.Ed. 349.

8. United States v. Niles, D.C., 122 F. Supp. 382.