This is an action for a declaratory judgment brought by the New Jersey Turnpike Authority and naming the Attorney General of the State of New Jersey and the State Highway Commissioner as defendants.
The question presented is whether the New Jersey Turnpike Authority Act of 1948 which provides for the creation of said Authority and enumerates therein, its functions, powers and limitations, is constitutional, and seeks further a declaration as to rights and status of the parties thereunder.
The relief demanded in the complaint is as follows:
"1. That the said New Jersey Turnpike Authority Act of 1948, approved October 27, 1948, is constitutionally enacted and valid and effectual in accordance with its terms and now in full force and effect;
"2. That neither by enactment of the said New Jersey Turnpike Authority Act of 1948 did the Legislature of the State of New Jersey, nor by the issuance of its bonds in any amount whatsoever pursuant to and in accordance with the said Act will the plaintiff create a debt or debts, liability or *Page 597 
liabilities of the State in contravention of the provisions of paragraph 3 of Section II of Article VIII of the New Jersey Constitution or any other provision thereof;
"3. That the plaintiff acting independently and without reference to any other state agency or officer, has good right, proper status and lawful authority to fix, revise, charge and collect, disburse, pledge, and apply or otherwise dispose of, tolls for the use of or transit over the Turnpike Project and the right-of-way thereof; and also to make and perform contracts with the holders of its bonds legally binding on it as to the rates of such tolls and the amount of revenues and income to be derived therefrom; and
"4. That the plaintiff, acting independently and without reference to any other state agency or officer, has good right, proper status and lawful authority to authorize and issue its bonds for any of its corporate purposes including the refunding of its bonds, and make covenants and other provisions for their security, in accordance with the terms and provisions of the said New Jersey Turnpike Authority Act of 1948, and all bonds of the Authority so authorized and issued in accordance with such terms and provisions will be the valid obligations of the plaintiff, legally binding upon it and enforcible in accordance with their terms and the terms and provisions of said Act."
The answer filed by the Attorney General admits the factual allegations of the complaint and the legal conclusions drawn therefrom.
The answer of the defendant, State Highway Commissioner, while admitting all of the factual allegations of the complaint, sharply disputes the legal conclusions advanced and maintains that the Turnpike Authority so constituted is merely a successor to the former State Highway Commission and an alter ego of the State itself. It is further maintained that the State is attempting to extend the debt limit by indirection in particular violation of the provisions of Article VIII, section II, paragraph 3 of the Constitution of 1947.
Perhaps it is more accurate to say that the defendant, State Highway Commissioner, does not admit paragraphs 11 and *Page 598 
12 of the complaint but does not deny the allegation of the facts therein. Thereafter the matter was listed on motion for a judgment upon the pleadings "for the relief demanded in the complaint."
The question to be determined subdivides itself as follows:
1. Is the question of the constitutionality of Chapter 454 of the Laws of 1948 properly raised in this action?
2. Does the statute violate our constitution of 1947?
It would seem after the oral argument that there is no serious opposite to the question of the constitutionality of this Act being properly raised in this action.
It may be said that all parties seek to obtain a speedy determination of this question that is of vital importance and desire to set in motion, action through this court, that in turn will bring about a final determination by the Supreme Court of this State.
It is sufficient to say that the applicable statutes and rules require, in this instant, that this court determine the constitutionality of the Act and the rights of the parties thereunder, with dispatch.
Particularly is it sought to be determined whether the power granted to the Turnpike Authority to provide for the issuance of bonds in order to finance the cost of construction of the contemplated Turnpike contravenes Article VIII, section II, paragraph 3 of the Constitution of New Jersey.
This paragraph of the constitution, which is substantially similar to, and for present purposes, may be considered as identical with Article IV, section VI, paragraph 4 of the Constitution of 1844 and is as follows:
"3. The Legislature shall not, in any manner, create in any fiscal year a debt or debts, liability or liabilities of the State, which together with any previous debts or liabilities shall exceed at any time one per centum of the total amount appropriated by the general appropriation law for that fiscal year, unless the same shall be authorized by a law for some single object or work distinctly specified therein. Regardless of any limitation relating to taxation in this Constitution, such law shall provide the ways and means, exclusive of loans, to pay the interest of such debt or liability as it falls due, and also to pay and discharge the principal thereof within thirty-five years from the time it is contracted; and the law shall not be *Page 599 
repealed until such debt or liability and the interest thereon are fully paid and discharged. No such law shall take effect until it shall have been submitted to the people at a general election and approved by a majority of the legally qualified voters of the State voting thereon. All money to be raised by the authority of such law shall be applied only to the specific object stated therein, and to the payment of the debt thereby created. This paragraph shall not be construed to refer to any money that has been or may be deposited with this State by the government of the United States. Nor shall anything in this paragraph contained apply to the creation of any debts or liabilities for purposes of war, or to repel invasion, or to suppress insurrection or to meet an emergency caused by disaster or act of God."
There is no dispute that the amount of bonds which the Authority will be required to issue in order to function will greatly exceed the limits demarcated by the above constitutional provision if the same be applicable to Chapter 545, P.L.
1948. Thus the narrow question presented and the crux of the issue is, whether the Legislature of New Jersey in the Authority Act of 1948 "created a debt or debts, liability or liabilities, of the State."
In order to bring this question more sharply into focus and permit of an analysis of the problem it appears necessary that certain pertinent portions of this somewhat lengthy Act be outlined. Title (Chapter 454, P.L. 1948)
"AN ACT to facilitate vehicular traffic in the State of New Jersey by providing for the construction, maintenance, repair and operation of turnpike projects; creating the New Jersey Turnpike Authority and defining its powers and duties; providing for financing such projects by the issuance of turnpike revenue bonds of the Authority, payable solely from tolls and other revenues;
and providing for the collection of tolls and other revenues to pay the cost of construction, maintenance, repair and operation of such projects and to pay such bonds and the interest thereon."
 R.S. 27:23-2, N.J.S.A.
"Turnpike revenue bonds issued under the provisions of this act shall not be deemed to constitute a debt or liability of the State or of any political subdivision thereof or a pledge of the faith and credit of the State or of any such political subdivision, but such bonds, unless refunded by bonds of the Authority created in this act, shall *Page 600 
be payable solely from the funds pledged for their payment as authorized herein. All such turnpike revenue bonds shall contain on the face thereof a statement to the effect that the Authority is obligated to pay the same or the interest thereon only from the tolls or revenues pledged for their payment and that neither the State nor any political subdivision thereof is obligated to pay the same or the interest thereon and that neither the faith and credit nor the taxing power of the State or any political subdivision thereof is pledged to the payment of the principal of or the interest on such bonds.
"All expenses incurred in carrying out the provisions of this act shall be payable solely from funds provided under the authority of this act and nothing in this act contained shall be construed to authorize the Authority to incur indebtedness or liability on behalf of or payable by the State or any political subdivision thereof."
 R.S. 27:23-3, N.J.S.A.
"There is hereby established in the State Highway Department a body corporate and politic, with corporate succession, to be known as the `New Jersey Turnpike Authority.'"
 R.S. 27:23-5, N.J.S.A.
"The Authority shall be a body corporate and politic and shall have perpetual succession and shall have the following powers:
(g) To fix and revise from time to time and charge and collect tolls for transit over each turnpike project constructed by it;
(i) To acquire, hold and dispose of real and personal property in the exercise of its powers and the performance of its duties under this act;
(j) To acquire in the name of the Authority by purchase or otherwise * * * or by the exercise of the power of eminentdomain * * * public lands * * * and any fee simple absolute or any lesser interest in private property * * *.
(n) To receive and accept from any Federal Agency, subject to the approval of the Governor, grants for or in aid of the construction of any Turnpike project and to receive and accept aid or contributions, except appropriations by the Legislature,
from any source * * *."
 R.S. 27:23-6, N.J.S.A.
"* * * Any public highway affected by the construction of any Turnpike project may be vacated or relocated by the Authority in the manner now provided by law for the vacation or relocation of public roads, and any damages awarded on account thereof shall be paid by the Authority as a part of the cost of such project. * * *." *Page 601 
 R.S. 27:23-7, N.J.S.A.
"The authority is hereby authorized to provide by resolution, at one time or from time to time, for the issuance of bonds of the Authority for any of its corporate purposes, including the refunding of its bonds. The principal of and the interest on any issue of such bonds shall be payable solely from and be secured by a pledge of tolls and revenues." * * *.
 R.S. 27:23-8, N.J.S.A. Trust Agreement
"In the discretion of the Authority any bonds issued under the provisions of this act may be secured by a trust agreement by and between the Authority and a corporate trustee, * * * trust company or bank * * *. Such trust agreement * * * may pledge or assign tolls or other revenues * * * but shall not convey or mortgage any turnpike project or any part thereof." * * *.
 R.S. 27:23-12, N.J.S.A.
"* * * The Authority shall not be required to pay any taxes or assessments * * * and the bonds * * * issued under the provisions of this act, their transfer and the income therefrom (including any profit made on the sale thereof) shall be exempt from taxation."
 R.S. 27:23-16, N.J.S.A.
"When all bonds * * * shall have been paid * * * such project or projects, if then in good conditions and repair to the satisfaction of the State Highway Department, shall become part of the State Highway system and shall thereafter be maintained by the State Highway Department free of tolls;" * * *.
 R.S. 27:23-17, N.J.S.A.
"The State Highway Department is hereby authorized in its discretion to expend out of any funds available for the purpose such moneys as may be necessary for the study of any turnpike project or projects and to use its engineering and other forces including consulting engineers and traffic engineers, for the purpose of effecting such study and to pay for such additional engineering and traffic and other expert studies as it may deem expedient, and all such expenses incurred by the department shall be paid by the department and charged to the appropriate turnpike project or projects, and the *Page 602 
department shall keep proper records and accounts showing each amount so charged. Upon the sale of turnpike revenue bonds for any turnpike project or projects the funds so expended by the department in connection with such project or projects shall be reimbursed by the Authority to the department from the proceeds of each bonds.
"Any obligation or expense hereafter incurred by the State Highway Department with the approval of the Authority for traffic surveys, borings, preparations of plans and specifications, and other engineering services in connection with the construction of a project shall be regarded as a part of the cost of such project and shall be reimbursed to the State out of the proceeds of bonds herein authorized."
The present issue does not come to this court unencumbered by judicial precedent. All parties hereto have quoted extensively from and relied on the decision in the case of Wilson, AttorneyGeneral, v. State Water Supply Commission, 84 N.J. Eq. 150
(E. A. 1915).
In that case a State water supply commission was established and by the terms of the original Act and Amendments subsequent thereto, the Commission was granted authority to acquire property by purchase, gift, condemnation, or other manner and to operate and maintain water works. The Commission was further empowered to issue its bonds and to secure the then payment by mortgaging the property so acquired.
In a 9-4 decision, the Court of Errors and Appeals reversed the Chancellor and found that to permit the Commission to issue bonds in an amount in excess of the then constitutional limit of $100,000 without referendum, would violate Article IV, section VI, paragraph IV of the Constitution of 1844 and therefore the particular contract by the Commission attempting to purchase lands and issue bonds therefor in the amount of $1,000,000 was ineffectual and without authority.
It is contended by the defendant, State Highway Commissioner, that the above cited case is controlling and therefore the Turnpike Authority is not authorized to issue bonds or incur obligations above the constitutional limitation without submission of the question to the electorate.
The plaintiff Authority, however, has pointed out the particulars in which the two Acts are at difference and on this basis it is urged that the instant case is distinguishable from *Page 603 
and does not come within the limitation of Wilson, AttorneyGeneral, v. State Water Supply Commission, supra.
In this former statutory enactment there existed no provision in which it was affirmatively declared that the credit of the State should not be pledged. Rather, an additional sinking fund was provided for after 5 years "from any appropriations made by the Legislature of the State of New Jersey." Further it was provided that the mortgage debt should be paid out of the property "unless a special appropriation be made by the Legislature of the State of New Jersey."
The discussion of Wilson v. State Water Supply by Justice Case in Hudson County v. State House Commission, 130 N.J.L. 90, at p. 93, is most helpful.
"The decision of the Court of Errors and Appeals in the cited case, as we understand it, went upon the theory that the land which the State Water Supply Commission undertook to purchase was to become State property; that the purchase price amounting to $1,000,000 was to be met by setting up a mortgage debt upon the lands; that the debt was a debt of the State; that whether or not the debt thus incurred on behalf of the State was to be collected from a particular fund or even if it was not an enforceable debt was beside the point, as it was nevertheless a debt of the State and the prohibition of the Constitution therefore ran against it; that contributing appropriations from the State Treasury were anticipated and that the appropriations so to be made would clearly be in payment of the debt. Upon these considerations, the court concluded that the contract created an indebtedness in violation of the Constitutional provision."
It is apparent that the Legislature in drawing up the present Authority Act carefully and meticulously avoided the pitfalls adverted to in the majority opinion in the Wilson case, even to the extent of providing that the Authority "shall not convey, or mortgage any Turnpike project or any part thereof."
A fair analysis of the opinion in the Wilson case and the clearly distinguishable factors present in the case sub judice
leaves this court of the opinion that the constitutional requirements *Page 604 
have been complied with in the legislation at bar and that the Legislature has not herein created "a debt or debts, liability or liabilities of the State" within the meaning of the Constitutional provision. Not only does section 2 (R.S.
27:32-2) of the Authority Act specifically and emphatically state "Nothing in this Act contained shall be construed to authorize the Authority to incur indebtedness or liability on behalf of, or payable by the State, or any political subdivision thereof," but again the section requires that full notice of such fact be given to all prospective bond holders on the face of all such Turnpike revenue bonds.
Plaintiff's brief is replete with well documented evidence that the majority of our sister States, when confronted with similar constitutional provisions, have almost universally held that where the credit of the State is expressly withheld, and the obligations incurred by the corporate body so created are limited for payment from "special funds," that such enactments do not violate these constitutional prohibitions although many of these would not fit within the narrower proscriptions of the Wilson case, and thus are beyond the periphery of this court's discussion, nevertheless they clearly indicate the trend of judicial thought with reference to self-liquidating public improvements, so sorely needed in our ever increasing complex society. (See Robertson v. Zimmerman (N.Y. Ct. of Appeals
1935), 268 N.Y. 52. State v. Regents of University System ofGeorgia (S.Ct. (Ga.) 1934), 179 Ga. 210, 175 S.E. 567;Hogue v. Housing Authority of North Little Rock (S.Ct. Ark.
1940), 201 Ark. 263, 144 S.W.2d 49).
These authorities, together with the fact that the instant case is distinguishable from the limitations imposed in Wilson v.State Water Supply Commission, supra, and the further discussions of the Wilson case as found in Hudson County v.State House Commission, supra, and in Sherwood v.Bergen-Hackensack Sanitary Sewer Authority, 135 N.J.L. 304,310-313, and not ignoring entirely the very excellent minority opinion in the Wilson case, bring forceably a timely reminder of the rule, at least to this court "that judicial *Page 605 
intervention is justifiable only where there is clear and palpable evasion of the constitutional mandate." I find no such evasion.
The debt created by the Turnpike Authority Act of 1948 is not the debt of the State but is the debt of a separate corporate entity, the New Jersey Turnpike Authority. The language of the Authority Act is clear and concise and cannot increase the tax burden nor transgress the constitutional provision.
A form of judgment in favor of the plaintiff determining and declaring the question of the constitutionality and the validity of the New Jersey Turnpike Authority Act of 1948 and the rights and status of the parties thereunder, in conformity with these conclusions, and for the relief demanded in the complaint, may be submitted.