25 N.J. Super. 149 (1953)
95 A.2d 606
HENRY J. BEHNKE, PLAINTIFF,
v.
NEW JERSEY HIGHWAY AUTHORITY, THEODORE D. PARSONS. ATTORNEY-GENERAL OF THE STATE OF NEW JERSEY, AND WALTER T. MARGETTS, JR., TREASURER OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 28, 1953.
*151 Mr. Douglas V. Aitken, attorney for plaintiff.
Mr. Morris M. Schnitzer, attorney for defendant New Jersey Highway Authority.
Mr. Theodore D. Parsons, Attorney-General, pro se and as attorney for defendant Walter T. Margetts, Jr., State Treasurer (Mr. Benjamin C. Van Tine, Deputy Attorney-General, appearing).
Mr. Roger Hinds, attorney for New Jersey Taxpayers Association, which files a brief as amicus curiae.
EWART, J.S.C.
The plaintiff, a citizen, resident, freeholder and taxpayer in the Township of Upper Deerfield, County of Cumberland, by his complaint filed in this cause levels an attack against the constitutionality of L. 1952, c. 17, by the terms whereof the State of New Jersey would guarantee punctual payment of the principal and interest *152 of bonds, not exceeding in the aggregate the sum of $285,000,000, to be executed in the name of and issued by New Jersey Highway Authority, created by L. 1952, c. 16 (N.J.S.A. 27:12B-1 et seq.), and providing for a referendum by the qualified legal voters of the State at the general election in 1952 as to whether or not the terms of said act, i.e., L. 1952, c. 17, should be approved or disapproved.
The complaint alleges (par. 13) that in accordance with the provisions for said referendum vote by the people, the said statute (L. 1952, c. 17) was appproved by a majority of the legally qualified voters of the State voting thereon.
In his complaint the plaintiff charges that the guarantee provided in L. 1952, c. 17, is unconstitutional because it contravenes Art. VIII, Sec. II, par. 1, of the Constitution of 1947, which provides that the credit of the State shall not be directly or indirectly loaned in any case, and Art. VIII, Sec. III, par. 3, of the 1947 Constitution, which provides that no donation of land or appropriation of money shall be made by the State to or for the use of any society, association or corporation whatever.
Plaintiff demands a declaratory judgment under the provisions of the statute, N.J.S. 2A:16-52, 53, determining the question of the constitutionality of the said act, L. 1952, c. 17, and an injunction restraining New Jersey Highway Authority and the State Treasurer from proceeding under the provisions of the statute last cited.
The defendants, by their respective answers, admit the essential factual allegations of the complaint and join in the plaintiff's demand for a declaratory judgment. And the answer of New Jersey Highway Authority sets up additional separate defenses, all of which tend to support the constitutionality and validity of the statute in question.
Defendants have moved for judgment in their favor on the pleadings pursuant to the provisions of Rule 3:12-3. At the argument on said motion, a consent order was entered amending the complaint by adding sub-paragraphs (c) and (d) to paragraph 18 thereof, which sub-paragraphs attack the constitutionality of L. 1952, c. 17, by alleging in sub-paragraph *153 (c) that it violates Art. VIII, Sec. II, par. 2, of the 1947 Constitution, which provides that no money shall be drawn from the State Treasury but for appropriations made by law, etc., and by alleging in sub-paragraph (d) that said statute violates Art. VIII, Sec. I, par. 1, of the 1947 Constitution which provides that property shall be assessed for taxation under the general laws and by uniform rules, etc.
And by the terms of said order permitting an amendment to the complaint, the defendants' answers theretofore filed to the original complaint are taken as denying the additional matters alleged by the said amendments to the original complaint.
While the plaintiff does not attack the constitutionality or validity of L. 1952, c. 16 (N.J.S.A. 27:12B-1 et seq.), which creates New Jersey Highway Authority and defines its authority, powers, duties and obligations, it is deemed necessary to notice generally the provisions of the said chapter 16 because of its close relationship to chapter 17, L. 1952 which is under attack.
L. 1952, c. 16 (N.J.S.A. 27:12B-1 et seq.), known as The New Jersey Highway Authority Act, was apparently modeled upon the New Jersey Turnpike Authority Act of 1948 (L. 1948, c. 454; N.J.S.A. 27:23-1 et seq.). The constitutionality of the New Jersey Turnpike Authority Act, excepting section 17 thereof, was upheld by our State Supreme Court in New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949), and that decision no doubt is the reason why plaintiff does not now attack the constitutionality of the act creating New Jersey Highway Authority.
Both the Turnpike Authority Act and the Highway Authority Act establish within the State Highway Department bodies corporate and politic with corporate succession, to be known under the Turnpike Authority Act as "New Jersey Turnpike Authority" (N.J.S.A. 27:23-3), and under the Highway Authority Act as "New Jersey Highway Authority" (N.J.S.A. 27:12B-4). Under both acts the Authority is constituted an instrumentality exercising public *154 and essential governmental functions, and the exercise by the Authority of the powers conferred by the respective acts in the construction, operation and maintenance of highway projects are deemed and declared to be essential governmental functions of the State.
Both the Turnpike Authority and the Highway Authority are, by the terms of the respective acts, authorized to acquire, construct, maintain, repair and operate modern express highways; to impose tolls and charges for the use of said highways; and to make, issue, negotiate and sell notes and bonds for the purpose of raising funds to finance the cost of acquisition, construction and maintenance of said highway projects; and under both statutes the respective Authorities are authorized to pledge the highway tolls and charges collected for the payment of the interest to accrue and the principal of said notes and bonds as they may severally mature.
Both the Turnpike Authority and the Highway Authority are given power of eminent domain in the acquisition of lands necessary for the construction of the highways.
The New Jersey Highway Authority (L. 1952, c. 16; N.J.S.A. 27:12B-1 et seq.) is authorized to construct, maintain, repair and operate a highway project to be known as "The Garden State Parkway," being a highway to begin at such points as the Authority may select at Paterson and at State Highway Route 17 in Paramus or Ridgewood, and thence extending in a general southwardly direction to a junction in Passaic County; thence generally along an existing state highway route through Clifton in Passaic County; thence through Essex and Union Counties to Woodbridge; thence to the Raritan River in the vicinity of the Edison Bridge; thence over the Raritan River southwardly through Middlesex and Monmouth Counties to Toms River; thence southwardly to a point at or near the City of Cape May.
Section 2 of the Turnpike Authority Act (N.J.S.A. 27:23-2) and section 10 of the Highway Authority Act (N.J.S.A. 27:12B-10) both expressly provide that bonds or notes issued under the provisions of the respective acts by *155 the respective Authorities shall not constitute a debt or liability of the State or of any political subdivision thereof, or a pledge of the faith and credit of the State or of any such political subdivision, and that all such notes or bonds issued by the respective Authorities shall contain on their face a statement to that effect.
Section 10 of the Highway Authority Act (N.J.S.A. 27:12B-10), while providing that the notes or bonds to be issued by New Jersey Highway Authority shall not constitute a debt or liability to the State or a pledge of the faith and credit of the State, contains the qualifying phrase, "except as otherwise provided by or pursuant to any law or laws hereafter submitted to the people pursuant to Section II of Article VIII of the State Constitution and approved by a majority of the legally qualified voters of the State voting thereon."
L. 1952, c. 17, the validity of which is attacked in this suit, provides in part as follows:
"1. A liability of the State of New Jersey is hereby authorized for the guaranty of punctual payment of principal of and interest on bonds, not exceeding two hundred eighty-five million dollars ($285,000,000.00) in aggregate principal amount, of the New Jersey Highway Authority (hereinafter called the `Authority'), the body politic and corporate established in the State Highway Department * * *.
2. No bonds of the Authority shall be guaranteed by the authority of this act except bonds which mature within thirty-five years from their respective dates and bear interest at a rate or rates not exceeding three per centum (3%) per annum. The aggregate principal amount of bonds of the Authority which shall be guaranteed by the authority of this act shall not exceed two hundred eighty-five million dollars ($285,000.000.00).
4. Guaranty made under this act of any bond of the Authority shall make the State unconditionally liable for the payment, when due, of the principal of and interest on the bond so guaranteed. In the event that the Authority shall fail to pay, when due, the principal of or interest on any bond so guaranteed, the State Treasurer shall pay the same to the holder thereof out of the funds provided pursuant to this act and thereupon the State shall be subrogated to the rights of the holder so paid."
Section 3 of the act provides the mechanics evidencing the State's guarantee of payment of the bonds.
*156 Sections 5, 6 and 7 of the act contain an appropriation, provision for a tax levy, and a method of determining what amount must be raised in each year to meet the State's obligation.
Section 8 of the act provides for a referendum vote on the question by the voters of the State at large at the general election in November 1952.
The sections of the 1947 Constitution which plaintiff charges are violated by the provisions of L. 1952, c. 17, are as follows:
"The credit of the State shall not be directly or indirectly loaned in any case. Art. VIII, Sec. II, par. 1.
No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever. Art. VIII, Sec. III, par. 3.
No money shall be drawn from the State treasury but for appropriations made by law. All moneys for the support of the State government and for all other State purposes as far as can be ascertained or reasonably foreseen, shall be provided for in one general appropriation law covering one and the same fiscal year; except that when a change in the fiscal year is made, necessary provision may be made to effect the transaction. No general appropriation law or other law appropriating money for any State purpose shall be enacted if the appropriation contained therein, together with all prior appropriations made for the same fiscal period, shall exceed the total amount of revenue on hand and anticipated which will be available to meet such appropriations during such fiscal period, as certified by the Governor. Art. VIII, Sec. II, par. 2.
Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value; and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district." Art. VIII, Sec. I, par. 1.
Defendants contend that the constitutional prohibitions against the loan of the State's credit and the appropriation of public moneys to or for the use of any society, association or corporation were intended to conserve public resources and prevent their use for the support or aid of privately controlled projects or ventures, and that the sections *157 of the Constitution above mentioned have no application to support of public projects or ventures, undertaken and controlled by public corporations in which no individual, association, society or corporation has any selfish interest by way of ownership, dominion, control or otherwise. And defendants, on economic grounds, justify the proposed guaranty and assumption of liability by the State by the argument that the proposed issue of bonds by the Highway Authority, the proceeds from the sale of which are dedicated to the construction of the Garden State Parkway, can be marketed at a much lower rate of interest if payment be guaranteed by the State than the rate of interest that would have to be paid without the State's guarantee, and suggest that the saving in interest to accrue on the bonds, over the life thereof, would amount to as much as $80,000,000. And it has also been suggested that the experience of the New Jersey Turnpike Authority would tend to indicate that there is little likelihood that the State would ever be called upon to make good on its guarantee of the payment of the interest and principal of said bonds in view of the fact that the revenues and tolls to be collected from the operation of a Garden State Parkway are to be pledged for the payment of the interest and principal of said bonds. Those arguments, of course, are without value on the question of whether or not L. 1952, c. 17, contravenes the constitutional provisions, but they do explain the reasons for the proposal to have the State guarantee payment of the principal and interest of the proposed bond issue by the New Jersey Highway Authority.
There are no disputed questions of fact for determination in this case.
The legal issues to be decided are:
1. Does the plaintiff have a standing to prosecute this action?
2. Is this suit for a declaratory judgment the proper method of testing the constitutionality of L. 1952, c. 17?
3. Is a guarantee by the State of the proposed bonds of the New Jersey Highway Authority, a public corporation, *158 issued to finance the construction of the Garden State Parkway, a valid use or a prohibited loan of the State's credit?
4. Is an appropriation of State moneys to discharge its obligation under the proposed guarantee of bonds of the Highway Authority a valid use of the State's revenues or an appropriation of public moneys to a corporation prohibited by the Constitution?
5. Does the appropriation contained in L. 1952, c. 17, par. 5, violate Art. VIII, Sec. II, par. 2, of the Constitution?
6. Does L. 1952, c. 17, par. 5, providing for the assessment and collection of a tax on real and personal property violate Art. VIII, Sec. I, par. 1, of the Constitution?
In construing the meaning of constitutional provisions, regard should be had not only to the letter of the provision, but also the spirit and purpose thereof and the principles announced by the Constitution and the amendments thereto must be kept in mind.
After consideration of the constitutional provisions brought in question by this suit, of the adjudications by the courts on these questions, and of the briefs and arguments of counsel, I have reached the following conclusions:

I.
Plaintiff, as a citizen and taxpayer, has the requisite status to challenge the validity of L. 1952, c. 17, and of the action proposed to be taken by virtue thereof. Haines v. Burlington County Bridge Commission, 1 N.J. Super. 163 (App. Div. 1949); DeLorenzo v. City of Hackensack, 9 N.J. 379 (1952).

II.
The constitutionality of a State statute may be determined in an action for a declaratory judgment if the controversy be actual and bona fide, and not merely academic. I find that the controversy here presented is actual and bona fide, and not merely academic. New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949); Abelson's v. *159 New Jersey State Board of Optometrists, 5 N.J. 412 (1950).

III.
The guarantee by the State of New Jersey of the bonds and obligations of New Jersey Highway Authority is a valid use and not a prohibited loan of the State's credit (1947 Const., Art. VIII, Sec. II, par. 1).
The prohibition of a loan of the State's credit (1947 Const., Art. VIII, Sec. II, par. 1) is copied verbatim from the Constitution of 1844 (1844 Const., Art. IV, Sec. VI, par. 3).
The State's Constitution of 1776 contained no prohibition against a loan of the State's credit nor against the donation of land or appropriation of money by the State or any municipal corporation to or for the use of any society, association or corporation.
The earliest record of constitutional restrictions against a loan of the State's credit or the donation of land or appropriation of money by a State or municipal corporation to or in aid of any private individual, association or corporation, to which the attention of the court has been called, is to be found in the Rhode Island Constitution of 1842, Art. 4, Sec. 13 of which reads as follows:
"The general assembly shall have no power, hereafter, without the express consent of the people, to incur state debts to an amount exceeding fifty thousand dollars, except in time of war, or in case of insurrection or invasion; nor shall they in any case, without such consent, pledge the faith of the state for the payment of the obligations of others. This section shall not be construed to refer to any money that may be deposited with this state by the government of the United States."
6 Thorpe, American Charters, Constitutions and Organic Laws (1909).
This provision in the Rhode Island Constitution doubtless formed the model for similar provisions to be found in both the New Jersey Constitution of 1844 and in the constitutions of most of the other states. 3 Constitutions of the *160 State and United States (1938). That volume contains copies of all of the state constitutions, and in the index at the back of the book, page 1803, under the heading "State Debt" and the sub-heading "Limit of Amount," will be found references to similar provisions in the constitutions of most of the states.
Beginning in the early 19th Century this country witnessed an enormous development and expansion of roads, canals and other means of communication undertaken in the main by private corporations, but supported in many instances by loans of the state or public credit. The scope of these ventures with the support of public credit went so far in the State of New York as to imperil the solvency of the State. 2 Lincoln, Constitutional History of New York (1906), pages 80-81.
The delegates to the Constitutional Convention of 1844 in this State were well aware of this problem. On page 64 of Proceedings, New Jersey Constitutional Convention  1844, reference was made to the efforts by Morris Canal Company and by the Delaware-Raritan Canal Company to obtain large loans upon the credit of the State in furtherance of their particular projects. And further discussion will be found on the same subject on page 310 in the same volume.
To guard against this evil of lending or pledging public credit in support of private ventures, the Constitution of 1844 had incorporated therein the provision:
"The credit of the state shall not be directly or indirectly loaned in any case." (Art. IV, Sec. VI, par. 3)
And to further guard against a too liberal and prodigal use of the State's credit even in support of public works as distinguished from private ventures, there was also inserted in the Constitution of 1844 the limitation by which the Legislature was prohibited from creating a debt exceeding the sum of $100,000, except for certain limited purposes, without the sanction of a majority of the votes cast at a general election. (Art. IV, Sec. VI, par. 4).
*161 The prohibition against a loan of the State's credit and the limitation upon the creation of state debt proved inadequate to guard the State's finances. While the original Constitution of 1844 erected a bar against the support of private ventures by use of the State's credit, there was nothing in the original Constitution which prevented donations or appropriations of public moneys in support of private ventures. And the original Constitution of 1844 did not prohibit counties or municipalities from the practices prohibited to the State. These evils were brought under control by amendments to the 1844 Constitution adopted in 1875, viz. Paragraph 19 of Article I of the 1844 Constitution was added so as to deny to local governments power to give any money or property or to loan their money or credit to or in aid of any individual, association or corporation, and paragraph 20 of Article I of the 1844 Constitution which provided:
"No donation of land or appropriation of money shall be made by the state or any municipal corporation to or for the use of any society, association or corporation whatever."
In Carr v. Merchantville, 102 N.J.L. 553 (Sup. Ct. 1926), Justice Katzenbach at page 556 described the cause of these constitutional prohibitions and limitations as follows:
"The reason why these sections were put into the constitution, as amended in 1875, was because of a practice that had grown up very largely in the west in the furtherance of aid to railroads and other private corporations, which, of course, were corporations, it is true, in most instances, affecting the public interest."
The prohibitions and limitations contained in the original Constitution of 1844, plus the additions made by the amendments in 1875, resulted in a complete scheme of fiscal control of public moneys and credit, whether of the State or of municipal corporations, by providing: (1) the requirement of a public referendum in order to authorize the creation of a substantial state debt for any purposes and under any circumstances short of war and public disaster, and (2) a flat prohibition upon the loan of credit, the donation of *162 land, or the appropriation of public moneys in all or support of private ventures.
The amount ($285,000,000) of the proposed debt to be created for the building of the Garden State Parkway, and guaranteed by the State, is not an issue in this case inasmuch as the statute authorizing the State to guarantee such bonds was submitted to and ratified by a substantial majority of those voting on the question in the general election in November 1952.
The first vital question at issue in this suit is whether the guarantee of the payment of the principal and interest of said bonds by the State, as provided in Chapter 17, L. 1952, violates par. 1, Sec. II, Art. VIII of the 1947 Constitution which prohibits the credit of the State from being directly or indirectly loaned in any case. And that question is closely allied with the further question of whether the appropriation of public moneys incorporated in par. 5 of Chapter 17, L. 1952, in discharge of the State's obligation under the guarantee constitutes a valid use of the State's revenue or a prohibited appropriation of public moneys to a private corporation. However, the question is not novel.
Examples of unlawful appropriation of public funds in support of private ventures, as distinguished from public projects, will be found in the following cases: Strock v. East Orange, 77 N.J.L. 382 (Sup. Ct. 1909); Jersey City v. North Jersey Street Ry. Co., 78 N.J.L. 72 (Sup. Ct. 1909); In re Voorhees, 123 N.J. Eq. 142 (Prerog. 1938), affirmed 121 N.J.L. 594 (Sup. Ct. 1939), affirmed 124 N.J.L. 35 (E. & A. 1939); Wilentz v. Hendrickson, 133 N.J. Eq. 447 (Ch. 1943), affirmed 135 N.J. Eq. 244 (E. & A. 1944); Jamouneau v. Local Government Board, 6 N.J. 281 (1951); People v. Westchester County National Bank, 231 N.Y. 465, 132 N.E. 241, 15 A.L.R. 1344 (Ct. App. 1921); In re Opinion of Justices, 291 Mass. 567, 195 N.E. 897, 98 A.L.R. 1364 (Sup. Jud. Ct. Mass. 1935).
Without going into the details, suffice it to say that in all of these cases legislation attempting to make donations or appropriations of public funds in support of private ventures, *163 rather than of public projects, was held invalid because in contravention of the constitutional prohibitions.
On the other hand, the courts appear to have held quite uniformly that the constitutional provisions cited offer no barrier to the use of public credit or to the appropriation of public moneys in support of all legitimate governmental activities, whether or not carried on in the name of the State itself or by means of the instrumentality of a public corporation, such, for instance, as a parking authority, a housing authority, a port authority, or other public instrumentalities.
In Rutgers College v. Morgan, 70 N.J.L. 460 (Sup. Ct. 1904), the court held (pages 473-4) that the constitutional prohibition against donation of land or appropriation of public moneys to or for the use of any society, association or corporation were designed as an insurmountable barrier to giving free state aid to private or sectarian schools and were not intended to circumscribe the legislative power to furnish facilities by general laws for public education under the State's own supervision. Referring to Section 20 of Article I of the Constitution of 1844, the court said:
"This provision, as well as that relating to special laws, does not bar instrumentalities for public education provided by the state and under its control by general laws where the appropriation is made for such schools." (Pages 473-474)
In Trustees of Free Public Library of Newark v. Civil Service Commission, 83 N.J.L. 196 (Sup. Ct. 1912), the court recognized that a separately incorporated agency (public library) is nevertheless a part of the governmental body to which it is attached and the court, citing the Rutgers College case, supra, sustained the validity of appropriations made and indebtedness incurred by the City of Newark for the support of the separately incorporated Newark public library.
In re Voorhees' Estate, supra, Vice-Ordinary Buchanan assumed, without deciding, that the constitutional prohibition against appropriation of public moneys to or for the *164 use of private ventures was not intended to apply in cases of grants to public corporations. 123 N.J. Eq. 142, at 148.
In Carr v. Merchantville, 102 N.J.L. 553 (Sup. Ct. 1926), a statute authorized two municipalities to combine in the purchase of privately owned water works to be financed by the joint credit of the municipalities. The legislation was attacked upon the ground that each municipality made itself responsible for the aggregate debt of the venture and its credit was thereby loaned to the other municipality as well as to the water works commission. Justice Katzenbach answered that contention at page 557 by stating:
"* * * it seems to me that where municipalities obtain a benefit  and that they obtain by the purchase of a water company  and they issue bonds under this provision, that is not a violation of Sections 19 and 20 of Article I of the Constitution."
In Romano v. Housing Authority of City of Newark, 123 N.J.L. 428 (Sup. Ct. 1939), affirmed 124 N.J.L. 452 (E. & A. 1940), the question involved was whether or not the statute provided an extension of money or credit to the Housing Authority in violation of the prohibition of the State Constitution. The court held that although the statute may in effect provide for the extension of money or credit to the Housing Authority, a governmental agency, it does not thereby violate the State Constitution prohibiting appropriation of money to or for the use of any society, association or corporation, for the reason that moneys or credits extended to the Housing Authority are no more than an appropriation from the State's general funds for the benefit and support of one of the State's agencies, organized to engage in the accomplishment of an important public work (123 N.J.L. 428 at 433, 434).
In Wilentz v. Hendrickson, 133 N.J. Eq. 447 (Ch. 1943), affirmed 135 N.J. Eq. 244 (E. & A. 1944), Vice-Chancellor Jayne said at page 480:
"These constitutional amendments were, however, directed at the means of effectuating that public purpose. They were intended to prevent the accomplishment of that purpose by the means of aid to *165 private corporations, not constituting public agencies controlled by the state."
In City of Camden v. South Jersey Port Commission, 4 N.J. 357 (1950), Chief Justice Vanderbilt, in speaking of these prohibitions against the donation of lands or the appropriation of money to or for the use of any society, association or corporation, said at page 368:
"It is well established, not only in New Jersey but in most of the states of the Union, that such prohibitions do not apply to gifts or appropriations or loans to a public corporation to finance a public purpose."
New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1950), sustained the constitutionality of the New Jersey Turnpike Authority Act of 1948 (N.J.S.A. 27:23-1 et seq.). That case involved the question of whether or not obligations incurred by the Turnpike Authority created a debt or liability of the State which would be invalid for want of sanction at a referendum vote. In that case the court found the Turnpike Authority was an autonomous corporation and an independent entity whose debts created no liability against the State (in view of the express provisions of the statute) and were therefore beyond the purview of the constitutional debt limitation.
In City of Camden v. South Jersey Port Commission, 2 N.J. Super. 278 (Ch. Div. 1949), the court held that the Port Commission was a public corporation, eligible for municipal support, and the Supreme Court affirmed (4 N.J. 357), holding that such constitutional prohibitions do not apply to gifts or loans to a public corporation to finance a public project.
In Lynch v. Borough of Edgewater, 8 N.J. 279 (1951), the Supreme Court held that in determining whether a statute violates the constitutional prohibition inhibiting donation or appropriation of public funds to private individuals, the test is whether the statute in question was enacted for a public or private purpose, and if for a public purpose that it does not contravene the Constitution.
*166 In re Opinion of Justices, 261 Mass. 523, 159 N.E. 55 (Sup. Jud. Ct. Mass. 1927), there was involved the question of the constitutionality of a bill in the Massachusetts Legislature by which the Commonwealth would guarantee payment of bonds proposed to be issued by public trustees of the Boston Elevated Railways Company to provide funds for the improvement and continued operation of the railways. It appears in the opinion that Section 1 of Article 62 of amendments to the Massachusetts Constitution prohibits the giving or loaning in any manner of the credit of the Commonwealth in aid of any corporation which is privately owned and managed. In that case the court advised the Legislature that the State might lawfully guarantee payment of the securities, notwithstanding the constitutional inhibition, because the railway was in possession of public trustees in behalf of the Commonwealth; that the railway was being operated for public use and to serve public needs; and that the purposes of the guarantee were public as distinguished from private and that hence public moneys might be lawfully expended and the public credit pledged therefor.
It is quite apparent from the provisions of the Highway Authority Act (L. 1952, c. 16), that New Jersey Highway Authority is a public corporation empowered to provide, operate and maintain an essential public service; and hence the conclusion that the provisions of L. 1952, c. 17, by which the State would guarantee payment of the principal and interest of bonds authorized to finance the cost of the building of Garden State Parkway, is for purely public as distinguished from a private purpose and does not contravene the constitutional prohibition against a loan of the State's credit.

IV.
The appropriation of public moneys contained in paragraph 5 of L. 1952, c. 17, to discharge the State's obligation in guaranteeing payment of bonds to be issued by the Highway Authority is a valid use for public purposes of the State's revenues.
*167 In compliance with the requirements of Art. VIII, Sec. II, par. 3, of the Constitution, the Legislature in authorizing the creation of a debt (guaranty) by the State also provides the means for meeting the obligation and discharging the debt, viz., an appropriation of revenues derived from the state motor fuels taxes and from taxes to be assessed against and levied upon real and personal property.
Plaintiff challenges these appropriations of public funds upon the ground that they contravene Art. VIII, Sec. III, par. 3, of the Constitution which reads:
"No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever."
The decisions collected under section III of these conclusions, which approve the appropriation of public funds to public bodies for use in the performance of essential public services and functions, refute plaintiff's argument on this point.
Furthermore, the appropriation contained in L. 1952, c. 17, is not to or for the use of any society, association or corporation. By the terms of the statute the appropriated funds may be applied only to the payment of Authority bonds in default.

V.
The appropriation of public funds contained in L. 1952, c. 17, par. 5, does not violate Art. VIII, Sec. II, par. 2, of the Constitution.
Under this point plaintiff charges that the appropriation of motor fuel taxes and the provision for the assessment and collection of taxes upon the real and personal property as contained in L. 1952, c. 17, par. 5, contravenes Art. VIII, Sec. II, par. 2, of the Constitution which provides in part:
"All moneys for the support of the State government and for all other State purposes as far as can be ascertained or reasonably foreseen, shall be provided for in one general appropriation law covering one and the same fiscal year; * * *."
*168 This point was not raised in plaintiff's original complaint but arose on the argument and plaintiff was permitted to amend the complaint to include this point.
There would seem to be no question but that L. 1952, c. 17, does appropriate moneys for years to come, and is not a general appropriation law covering one fiscal year only. However, Art. VIII, Sec. II, par. 3, of the Constitution provides in part:
"* * * such law shall provide the ways and means, exclusive of loans, to pay the interest of such debt or liability as it falls due, and also to pay and discharge the principal thereof within thirty-five years from the time it is contracted; and the law shall not be repealed until such debt or liability and the interest thereon are fully paid and discharged."
The Legislature had no choice but to make full provision, for years to come and during the life of the proposed bonds, to meet the obligation of its guaranty. Had the appropriation in paragraph 5 of L. 1952, c. 17, been confined to one fiscal year, or had the Legislature provided in the general appropriation bill to meet the State's obligation under the guaranty for one year only, such provision clearly would have contravened the requirements of Art. VIII, Sec. II, par. 3, above quoted.
The two sections of Article VIII are to be read together, and certainly the appropriation made by the Legislature is not to be condemned because it meets the requirements of Art. VIII, Sec. II, par. 3 of the Constitution.

VI.
L. 1952, c. 17, par. 5, which provides for the assessment and collection of taxes on real and personal property, does not violate Art. VIII, Sec. I, par. 1, of the Constitution.
This point was not raised in plaintiff's original complaint but at the argument was permitted to amend his complaint to include this point.
*169 Plaintiff charges that the provision in L. 1952, c. 17, for an assessment and levy of taxes against the real and personal property throughout the State, contravenes Art. VIII, Sec. I, par. 1 of the Constitution which reads:
"Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally or by the State for allotment and payment to taxing districts shall be assessed according to the same standard of value; and such real property shall be taxed at the general tax rate of the taxing district in which the property is situated, for the use of such taxing district."
In support of this point plaintiff argues that the Garden State Parkway, the construction of which is provided for by L. 1952, c. 16, and to finance the cost of which an appropriation is contained in L. 1952, c. 17, will not enter or run through Cumberland County; that the imposition upon him of taxes for the construction of a highway to serve other counties in the State is a violation of the constitutional provision last cited, and in support thereof plaintiff cites City of Camden v. South Jersey Port Commission, 4 N.J. 357 (1950), and L. 1926, c. 336 (R.S. 12:11-1 et seq.), in which statute provision is made to finance the cost of the construction of the port facilities on the basis of the proportionate benefit to accrue from such improvements to each county or municipality within the district and that seven counties were included within the district. In the case last cited, the court stated that the money being expended for the port improvement was being spent for a local improvement and that the pier itself was located within the City of Camden, which city would derive the principal benefits therefrom.
In response to this argument, plaintiff has no right to assume that Garden State Parkway will not enter or run through Cumberland County. L. 1952, c. 16, creating New Jersey Highway Authority and providing for the construction of the Garden State Parkway, does not define the route of the Parkway south of the Village of Toms River, but merely provides that the Parkway shall run from Toms River southwardly to a point in the vicinity of Cape May City. *170 The statute leaves it to the discretion of the Highway Authority to fix the particular course the Parkway shall take.
I cannot see any logical contention in support of the plaintiff's argument that Garden State Parkway is a local rather than a general improvement and that, accordingly, taxes to be assessed to meet the cost of its construction should be limited to the particular section or sections to be benefited thereby. In City of Newark v. N.J. Turnpike Authority, 7 N.J. 377 (1951), at page 387, in referring to the New Jersey Turnpike, the court said:
"* * * the very concept of a turnpike designed to serve the best interests of the entire state and not merely those of particular localities."
The proposed Garden State Parkway, like the New Jersey Turnpike, is designed to be an express or super highway and the court will take judicial notice of the fact that it will extend through a longer section of the State than does the Turnpike. Certainly it is designed to serve the interests of the State at large and not merely those of particular counties or localities.
In conclusion, I find nothing in the provisions of L. 1952, c. 17, or the action to be taken by virtue thereof that would contravene or violate the provisions of our 1947 Constitution. And I am not unmindful that a legislative enactment should not be invalidated by the courts unless it clearly appears that the organic law has been violated and that the burden of showing such violation rests upon him who asserts it. Wilson v. State Water Supply Commission, 84 N.J. Eq. 150 (E. & A. 1914) (dissenting opinion by Justice Swayze at pages 160-161); State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, at 518 (E. & A. 1935); Everson v. Board of Education, 133 N.J.L. 350 (E. & A. 1945); Wilentz v. Hendrickson, 135 N.J. Eq. 244, at 250-251 (E. & A. 1944); New Jersey Turnpike Authority v. Parsons, 5 N.J. Super. 595 (Law Div. 1949); Lynch v. Borough of Edgewater, 8 N.J. 279 (1951).