# UNITED STATES v. KIRSCHENMAN.
## No. 4149.

District Court, D. South Dakota, S. D.
April 18, 1946.

George Philip, U. S. Atty., and Leo P. Flynn, Asst. U. S. Atty., both of Sioux Falls, S. D., for United States.

Henry C. Mundt, of Sioux Falls, S. D., for defendant.

NORDBYE, District Judge. (Acting under assignment to the District of South Dakota).

154

Defendant waived a trial by jury in writing and the matter was tried to the Court. He contends that his classification in IV–E by the Board of Appeals of South Dakota was arbitrary and capricious, and that he should have been entitled to an agricultural deferment and classified as II–C. He asserts, therefore, that his induction order was wholly invalid. He admits that he knowingly and wilfully refused to report for work of national importance on June 3, 1945, in pursuance of the order of the local board of May 23, 1945.

The evidence reflects the following proceedings before the local board. In his questionnaire dated May 25, 1942, defendant stated that he was 21 years of age and that he had been farming 106 acres since March, 1942, making his home, however, with his parents. He claimed to have been a minister of religion since 1939 with the Watchtower Bible and Tract Society, and certified in his questionnaire that he was conscientiously opposed to participation in the war in any form. He asked to be classified as IV–D. On July 31, 1942, the local board classified him as I–A. Defendant appealed, and apparently the Appeal Board, on October 24, 1942, determined that the registrant should not be classified in Class IV (other than Class IV–E), Class III, Class II, or Class I–H, and therefore the file was sent to the Department of Justice for its investigation and recommendation. It would appear that a hearing was had in Sioux Falls, South Dakota, in January, 1943, and on April 4, 1943, the registrant received a II–C classification. On April 26, 1944, he was continued in II–C until October 26, 1944. On December 4, 1944, he was continued in II–C to June 4, 1945. However, on December 26, 1944, he was reclassified from II–C to I–A. On January 9, 1945, he was notified to report for pre-induction physical examination. Registrant reported to Fort Snelling on January 16, 1945, and on January 20, 1945, he was notified that he had passed the physical examination. However, on January 17, 1945, the local board reclassified him as II–C for a period of six months, or until July 17, 1945. On January 24, 1945, the State Director took an appeal from the decision of the local board placing this registrant in II–C. The Board of Appeals of South Dakota, on a unanimous vote, classified him as IV–E. This reclassification was made on February 3, 1945. On February 9, 1945, registrant was notified of the action of the Appeals Board changing his classification from II–C to IV–E. On April 4, 1945, the local board sent notice of the IV–E classification and the physical fitness of the registrant to the State Director, and the State Director in turn notified the National Director. On May 23, 1945, registrant was notified by the local board that he should report to a work camp on June 3, 1945.

In that defendant knowingly and wilfully disobeyed an order to report for work of national importance issued by a Draft Board having jurisdiction of him as a registrant under the Act, the question arises as to whether there is any jurisdiction in this Court to review his classification in a prosecution under Section 311. In Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, the Supreme Court held that, in a prosecution under this section, a registrant could not defend on the ground that he was wrongfully classified and was entitled to a statutory exemption where the offense was a failure to report for induction into the armed forces or for work of national importance, unless he had taken all steps in the selective service process and had been finally accepted for service. As the court stated (320 U.S. at page 553, 64 S.Ct. at page 348, 88 L.Ed. 305):

"* * * Completion of the functions of the local boards and appellate agencies, important as are these functions, is not the end of the selective service process. The selectee may still be rejected at the induction center and the conscientious objector who is opposed to noncombatant duty may be rejected at the civilian public service camp. The connected series of steps into the national service which begins with registration with the local board does not end until the registrant is accepted by the army, navy, or civilian public service camp. Thus a board order to report is no more than a necessary intermediate step in a united and continuous process designed to raise an army speedily and efficiently."

The defendant urges, however, that he comes within the purview of the Estep case —Estep v. United States of America, 66 S.Ct. 423, 428. But in the Estep case the registrants had "pursued their administrative remedies to the end. All had been done which could be done." Estep obeyed the order for induction. He reported at the time and place indicated and

was accepted by the Navy. He did everything that he could do to comply with the intermediate steps of the process of selective service selection.

The instant situation seems on all fours with the Falbo decision, in that here, as there, defendant has seen fit to challenge the order of the local board before he has exhausted his administrative remedies. However, defendant seeks to differentiate the instant situation from the facts in the Falbo case. He points out that he had taken the pre-induction physical examination and had received a certificate of fitness, and that, therefore, the formality of reporting to the camp director would be a futile gesture in that he could do nothing more than to refuse to enter the work camp. But, in advancing this argument, the defendant misinterprets the certificate of fitness which he received on January 15, 1945, nearly six months before he was ordered to report to the work camp. In other words, this certificate of fitness is not final. It is made subject to the following stamped endorsement, which, although somewhat blurred, appears on his certificate: "Subject to complete re-examination if presented for induction after ninety days." Obviously, therefore, the ninety days having expired, the defendant was in the same position as if he had never taken a pre-induction physical examination, and was subject to a complete re-examination upon reporting to the work camp. Certainly, under these circumstances, the certificate of fitness did not insure that defendant would be accepted at the civilian public service camp. In the period intervening between his examination and his order to report, many contingencies may have arisen which may have rendered him totally unacceptable for the duties which would devolve upon him at the camp. For aught anybody knows, he may have contacted some contagious condition in the interim which would have endangered all the other inmates in the camp. But, in addition to the endorsement on the certificate of fitness, there is another cogent reason why the defendant's argument completely falls. The regulations which have been promulgated in regard to the assignment and delivery of a person to work of national importance under civil direction unmistakably indicate that defendant has not completed the intermediate steps in the process of registration to the acceptance by the camp director at the work camp. Regulation 653.11, entitled "Reception at Camps", in force on June 3, 1945, reads in part as follows:

"(b) As soon as possible after the assignee has reported to camp, the camp physician shall give him a physical examination and report to the Director of Selective Service any physical defects which may render the assignee unfit for general camp service.

"(c) Irrespective of the results of the physical examination given the assignee after he has reported to camp, the acceptance of the assignee at the camp to which he has been assigned shall occur when the camp director completes and signs the Order to Report for Work of National Importance (Form 50) concerning such assignee."

Regardless, therefore, of the significance of the endorsement which appears on the certificate of fitness issued to this defendant, the regulation above referred to leaves no doubt that the defendant was subject to a physical examination when he reported to the camp, and his acceptance as an assignee at the camp would not take place until the camp director had formally executed the order referred to in the regulation.

A situation identical with the one presented herein was before the Circuit Court of Appeals of the Ninth Circuit in Edwards v. United States, 145 F.2d 678, decided November 2, 1944. There, the defendant had taken a pre-induction physical examination and was thereafter ordered to report to a work camp. The regulation regarding physical examinations at the camp was at that time substantially the same as the regulation above recited. In disposing of defendant's contentions that he had complied with all of his administrative remedies and had completed the intermediate steps between registration and his acceptance, the court stated (145 F.2d at page 679):

"The evidence is clear that appellant appeared at the local board office in response to an order to report there for assignment to the Civilian Public Service Camp and that he refused to go to that camp. It is stipulated that he had then passed his final-type physical examination of his fitness for work at the camp but, under the existing regulations, if one becomes unfit at the time of arrival at the camp one

156

is given a further physical examination and if then rejected is to be returned to the board for further consideration of one's status.

"We hold that the civil administration of the selective service act does not terminate until the selectee in IV-E arrives at the camp to which he is ordered in physical condition fit for the service."

It may be pointed out that the court quoted in full Regulation 653.11, which was in effect in May, 1942, in support of its conclusion that the defendant under the circumstances therein had not exhausted the requirements of the selective service process. Moreover, it may be pointed out that the Edwards case was decided after Falbo v. United States, supra.

The Eighth Circuit has also construed the Falbo case in Van Bibber v. United States, 151 F.2d 444, decided October 17, 1945, in which a registrant sought to challenge in the courts the legality of his classification, the court stating (151 F.2d at page 446):

" * * * Only when he has exhausted his administrative remedies, has been ordered by his board to report for induction, has obeyed that order, and has been finally accepted for service, are the doors of the courts open to him to test the legality of his classification.".

It seems clear, therefore, that, under the admitted facts herein and the teachings of the Falbo case and the many cases interpreting that decision, this Court has no jurisdiction to review defendant's classification.

▮▮▮ However, if the Court has jurisdiction, as the defendant contends, to review his reclassification from II-C to IV-E, it would seem that he has failed to establish the invalidity of the reclassification. The Tydings Amendment, 50 U.S.C.A.Appendix § 305(k), on which he relies, did not make it mandatory on the local board to defer those engaged in agricultural occupations. Obviously, every board is required to determine each case on its individual merits, and the issue in every case is whether the public interest—national defense—requires a deferment, rather than the welfare or personal interest of the registrant. United States v. Commanding Officer, etc., D.C.Neb., 58 F.Supp. 933. Under the Tydings Amendment, the Board must first find that the registrant is necessary to, and

regularly engaged in, an agricultural occupation; that he is essential to the war effort; and that the deferment shall continue as long as he remains so engaged and until such time as satisfactory replacement can be obtained. In the instant situation, the local board deferred the defendant as one regularly engaged in an agricultural occupation and necessary to it and essential to the war effort from April, 1943, to February 3, 1945, when on appeal by the State Director, his classification was changed by the Appeal Board. It is not contended that the appeal taken by the State Director was not according to law, or that the defendant was in any way precluded from presenting to the local board, and through the local board to the Appeal Board, a full and complete showing of his agricultural activities and the reasons assigned by him for his claim of agricultural deferment. It appears that he was deferred for substantially two years, and when he was reclassified into Class IV-E by the Appeal Board, he was duly informed of the action taken by that board. It appears from his questionnaire that at the time he registered under the draft, he claimed to be a minister and a conscientious objector. He had originally requested a IV-D classification. However, he does not now contend that he is entitled to a IV-D classification, nor does he contend that his IV-E classification is contrary to the factual showing made in his questionnaire. His position is that the Appeal Board acted arbitrarily and capriciously in removing him from Class II-C to a IV-E classification because he was entitled to a further agricultural deferment. The question of whether one is engaged in an agricultural occupation and necessary to it and essential to the war effort is a matter which peculiarly comes within the knowledge, experience and discretion of those who are administering the Selective Service Act. United States v. Geesen, D.C., 59 F.Supp. 726. They, and not the Court, know the conditions in the particular area of the State of South Dakota where the defendant resides and the relation of his activities in the agricultural field to the war effort. It should be emphasized that the defendant is not entitled to an exemption from responding to his country's call in the armed forces or in performing work of national importance merely because he is an agricultural worker or a farmer. The war effort and the public in-

terest is the primary consideration. Moreover, the Tydings Amendment specifically provides that his deferment is to be continued only until such a time as a satisfactory replacement can be obtained. These fact questions are for the Selective Service boards, local and appellate, to pass upon. They know the agricultural conditions which prevail in their state, the opportunity for replacement, the bona fide character of the registrant's farming activities, or otherwise. As stated in the Estep case:

"* * * the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous."

In conclusion, it may be pointed out that all the evidence which defendant sought to offer in support of his deferment was before the Appeal Board. It is not made to appear that they did not accord this defendant the same unbiased consideration as was afforded to every other person claiming agricultural deferment. This Court is not informed as to what reasons may have prompted the Appeal Board to take the action which they did, but there is no showing which would suggest that they did not carefully and conscientiously weigh and consider all the evidence and other circumstances which may have had a bearing upon the propriety and necessity of the defendant's being further deferred on account of his agricultural activities. Even though this Court might differ with the Board in its conclusion as to the deferment of this defendant, it cannot substitute its judgment for that of the Board. If that were done, utter confusion would result in the administration of the Selective Service Act. Under all the circumstances, therefore, this Court cannot say on this record that the action of the Appeal Board was so arbitrary and unreasonable as to amount to a denial of a constitutional right. Goff v. United States, 4 Cir., 135 F.2d 610; United States v. Rinko, 7 Cir., 147 F.2d 1.

In view of the premises and on the evidence submitted and after due consideration, the Court finds that the defendant is guilty of the offense charged in the indictment. It is so ordered.

An exception is reserved to the defendant.