UNITED STATES of America, Plaintiff,

v.

Alfred Robert SUTTER, Defendant.

UNITED STATES of America, Plaintiff,

v.

Paul HUHA, Defendant.

UNITED STATES of America, Plaintiff,

v.

James Antone DAVINER, Defendant.

Nos. 23840, 23859, 23858.

United States District Court, S. D. California, Central Division.

Dec. 16, 1954.

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Asst. U. S. Atty., Hiram W. Kwan, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Harold Shire, Beverly Hills, Cal., for defendants.

JAMES M. CARTER, District Judge.

These three cases under the Universal Military Training and Service Act [1] are the first to arise in this district involving conscientious objectors who have been ordered to report for civilian work in an institution of the state or a political subdivision thereof.

The three indictments are in substantially the same form, alleging that the

1. Act of June 24, 1948, 62 Stat. 604 as amended, 50 U.S.C.A.Appendix, § 451 et seq.

defendant, a male person, within the class made subject to selective service under the above act, registered and became a registrant of a local board which was duly created and acting pursuant to the Act and regulations thereunder; that the defendant was classified I–O [2] and notified of the classification; that on a certain date [3] the defendant was "ordered to report for civilian work contributing to the maintenance of the national health, safety and interest as set forth in 'Order to Report for Civilian Work * * *'" which form was attached as Exhibit One to the indictment and incorporated by reference; that on a certain date the defendants did knowingly and wilfully fail and neglect (1) to proceed to the place of employment set forth in the incorporated "Order to Report", (in each instance the Los Angeles County Department of Charities, within the central division of this district) and (2) to report for said employment, and (3) to remain in said employment for twenty-four consecutive months [4] or for any period whatsoever; that by such conduct the defendant did knowingly and wilfully fail and neglect to perform a duty required of him by the Act and regulations.

At the trial, with jury waived, the draft board file of each defendant was received in evidence by stipulation and the government rested.

As to Sutter and Daviner, a stipulation was entered into between counsel, that each defendant if called as a witness, would testify that on November 4, 1954, he inspected the Bulletin board at the local board office and that there were not posted on the Bulletin board or at the local board office, any names or addresses of "advisors to registrants within the local board area." [5]

As to Sutter, it was stipulated between counsel that he reported to the local board on September 28, 1953 as ordered and was told to proceed to the Los Angeles County Department of Charities, but that on that day he wrote out and delivered to the board the statement appearing in the board file: "Lo. Board 22. I will not take the jobs that are given me at any time or place."

As to Huha, it was stipulated that he reported to the local board as ordered on October 26, 1953, and was given a slip or told to report to the Los Angeles County Department of Charities within forty-eight hours. The file contains such a slip with the notation, "Mr. Harnish, Chairman of L.B. 68 handed or attempted to hand this address to registrant P. Huha but registrant through (sic) it back on desk and said he wouldn't report since the law said he didn't have to."

It was stipulated Daviner reported to the local board as ordered on October 22, 1953. Daviner would not stipulate further, but voluntarily took the witness stand for questions. He admitted executing on October 22, 1953, the document, reading:

"I will not report to the Los Angeles County Dept. of Charities on the 26th day of October 1953 due to reasons further explained in typewritten statement submitted by myself. Respectfully yours

James Anton Daviner
Oct. 22, 1953.

2. I–O, is the class for conscientious objectors opposed to both combatant and non-combatant military service.

3. In the Sutter case no date is set forth.

4. The date Sutter failed to perform the acts (1), (2), (3) above is given as September 28, 1953; as to Daviner and Huha, the date is given as November 6, 1953. Sutter was indicted September 22, 1954; Daviner and Huha were indicted October 6, 1954. Thus in each instance less than one year elapsed from the date alleged as the violation and the date of indictment. The allegation as to failing to remain for twenty-four months can be treated as surplusage.

5. § 1604.41 of the regulations provides for the appointment of advisors to registrants and reads in part: "The names and addresses of advisors to registrants within the local board area shall be conspicuously posted in the local board office."

Also understanding possible penalty involved."

The file also contains a letter to the Department of Charities from the local board advising that Daviner had been ordered to report for work on October 26, 1953. The inference is clear that on October 22, 1953, Daviner was told to report to the Los Angeles County Department of Charities on October 26, 1953.

The defendants then filed in each case a written motion for judgment of acquittal, the motion was submitted and defendants rested. The three motions are identical and raise interesting and important questions as to the Act and the regulations, their constitutionality as applied, the sufficiency of the indictments and the correctness of the classification given.

Each defendant reported to the local board as ordered and no violation is charged in that respect.

### I.

#### The Sufficiency of the Indictment

Under § 10(b) of the Act, 50 U.S.C.A.Appendix, § 460(b),[6] the President is "authorized—(1) to prescribe the necessary rules and regulations to carry out the provisions of this title" and in § 10(c), 50 U.S.C.A.Appendix, § 460(c), "The President is authorized to delegate any authority vested in him under this title [Sections 451–454 and 455–471, 50 U.S.C.A.Appendix], and to provide for the subdelegation of any such authority." The present Act follows the same pattern as the earlier Act [7] and as to the earlier Act the delegation to the President, and by him to the Director of Selective Service, to exact unarmed service from conscientious objectors, was held a proper constitutional delegation of legislative power. Dingman v. United States, 9 Cir., 1946, 156 F.2d 148, cer-

tiorari denied 329 U.S. 730, 67 S.Ct. 86, 91 L.Ed. 630, rehearing denied 329 U.S. 831, 67 S.Ct. 479, 91 L.Ed. 705.

Section 6(j) of the Act, 50 U.S.C.A. Appendix, § 456(j), provides in part, that the conscientious objector to noncombatant service shall "be ordered by his local board * * * to perform" (for 24 months) "such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title [§ 462 of 50 U.S.C.A.App.] to have knowingly failed or neglected to perform a duty required of him under this title."

Section 12 of the Act, 50 U.S.C.A. Appendix, § 462, provides in part, that any person "who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title, or rules, regulations, or directions made pursuant to this title, * * * shall, upon conviction * * * be punished * * *."

Part 1660 of the Regulations provides generally for civilian work in lieu of induction. § 1660.1 provides in part,

"Definition of Appropriate Civilian Work.—(a) The types of employment which may be considered under the provisions of § 6(j) of Title 1 of the Universal Military Training and Service Act, as amended, to be civilian work contributing to the maintenance of the national health, safety, or interest, and appropriate to be performed in lieu of induction into the armed forces by registrants who have been classified in Class I–O shall be limited to the following:

"(1) Employment by the United States Government or by a State,

---

6. Act of June 24, 1948, 62 Stat. 604, provided it should be known as " 'Selective Service Act of 1948' ". The amendment of June 19, 1951, 65 Stat. 75, applied the term " 'Universal Military Training and Service Act' ". The Act may be

called by either name—Rowland v. United States, 9 Cir., 1953, 207 F.2d 621.

7. Selective Training and Service Act of 1940, 54 Stat. 885, 50 U.S.C.A.Appendix, §§ 301–318.

Territory, or possession of the United States, or by a political subdivision thereof, or by the District of Columbia.

"(2) * * *."

§ 1660.20(d) provides in part,

" * * * the local board, with the approval of the Director of Selective Service, shall order the registrant to report for civilian work contributing to the maintenance of the national health, safety or interest as defined in § 1660.1 which it deems appropriate * * *".

§ 1660.30 provides in part,

"Any registrant who knowingly fails or neglects to obey an order from his local board to perform civilian work contributing to the maintenance of the national health, safety or interest, in lieu of induction shall be deemed to have knowingly failed or neglected to perform a duty required of him * * *" under the Act.

Here the indictments did not charge a failure to report to the local board but specified in detail the registrant's failure to proceed to the work, to report and to remain. In its concluding sentence each indictment states "by the aforesaid conduct defendant did knowingly and wilfully fail and neglect to perform a duty required by him under the Act and the regulations * * *". The indictment also set forth a copy of the "Order to Report for Civilian Work," which specified "work as an institutional helper located at the Los Angeles County Department of Charities, Los Angeles, California." [8]

The "Order to Report for Civilian Work" incorporated by reference in the indictment, recited that the registrant had been found acceptable for civilian work contributing to the national health, safety or interest, and had been assigned to work, at the specified institution. There followed these orders. "You are ordered to report to the local board" fixing a date, "when you will be given in-structions to proceed to the place of employment." "You are ordered to report for employment" pursuant to the board's instructions. "To remain in employment" for 24 months, etc. The order concluded, "Failure to *report* * * * or to *proceed* to the place of employment * * * or to *remain* in this employment the specified time * * * will constitute a violation" of the Act. [Emphasis added.]

■ It is apparent the government framed its indictments on the specific language of the Order and particularly the last paragraph thereof. But it was not necessary to use the exact language of § 1660.30 of the regulations, with its precise statement that failure "to perform civilian work * * *" constitutes neglect or failure to perform a duty. When a registrant followed the conduct described in the indictment, he in fact "failed or neglected to obey an order from his local board to perform civilian work contributing" etc. § 1660.30. Furthermore, the indictment in the final paragraph alleged that by such conduct the defendant knowingly and wilfully *failed and neglected to perform a duty* required of him by the Act and regulations.

■ In Hopper v. United States, 9 Cir., en banc 1944, 142 F.2d 181, at page 184, a conscientious objector case, "The indictment charged the crime in the language of the statute, with particulars of the direction given and disobeyed and the time and place of the disobedience. We think the essential elements of the offense are stated, if not directly, certainly by implication", and quoted from Hagner v. United States, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861, " 'The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against

8. From Huha indictment; the two others are similar.

him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction" ' ". The court also referred to Crutchfield v. United States, 9 Cir., 142 F.2d 170 and United States v. Messersmith, 7 Cir., 138 F.2d 599 where indictments less specific were held good.

In Elder v. United States, 9 Cir., 1944, 142 F.2d 199, 200, the indictment alleged that defendant having registered, and " 'having been theretofore notified to report for work of national importance in lieu of induction' ", did on or about a certain date " 'knowingly, wilfully * * fail and neglect to perform a duty required by him' " under the Act, in that defendant did " 'fail and neglect to report for work of national importance * * *.' " The indictment was held good. Our indictments contain all that is in the Elder indictment and in addition more specific details of the violation.[9]

Other minor questions as to the sufficiency of the indictment remains. Each indictment alleges a specific date on which the defendant failed to (1) proceed to the place of employment, (2) report for work and (3) remain at work. Each date was a few days later than the date on which defendant was ordered to report to the board and did so report. It is argued that the record does not show specifically when defendant was to proceed etc. The first answer is found in the order to report which tells the defendant that he has been assigned to work and where that work is. In each instance this is evidence in the record, at least by inference that on reporting to the local board, defendant was informed when and where to go and all three defendants refused to perform any work at all. § 1642.2 of the regulations provides "when it becomes the duty of a registrant to perform an act * * * the duty or obligation shall be a continu-ing duty or obligation from day to day * * *". Finally under modern pleading exact dates are not necessary and the proof may show a violation on or about the day alleged. Penny v. United States, 6 Cir., 1954, 213 F.2d 363, 366. That part of the indictments before us that alleged failure to remain for twenty-four months [10] is clearly surplusage. The indictment can be read as charging a failure to remain at work for any time whatsoever.

## II.

### Venue

Although not raised by defendants, the matter of jurisdiction and venue should be considered. Sutter was a registrant of local board 22 in Sacramento County, California; Daviner, of local board 34 in San Joaquin County, California; and Huha of local board 68 in Fresno County, California. Sacramento and San Joaquin counties are in the Northern district of California, Northern Division. Fresno is in the Northern Division of the Southern district of California. 28 U.S.C.A. § 84.

§ 12(a) of the Act, 50 U.S.C.A.Appendix, § 462(a), defining offenses under the Act refers to "conviction in any district court of the United States of competent jurisdiction * * *." The Selective Training and Service Act of 1940, 54 Stat. 894, 50 U.S.C.A.Appendix, § 311, referred to "conviction in the district court of the United States having jurisdiction thereof * * *." We see no substantial differences between the provisions and there are no other provisions or regulations in the matter.

In United States v. Anderson, 1946, 328 U.S. 699, 705, 66 S.Ct. 1213, 1217, 90 L.Ed. 1529, the problem of jurisdiction under the 1940 Act was considered and the court held: "It is, of course, necessary in order to decide where the

---

9. See Marshall v. United States, 5 Cir., 1944, 140 F.2d 261; indictment good though it did not specify how accused was notified.

10. See note 4, supra.

crime is committed to ascertain what duty it was, the failure to perform which constitutes the crime, and also what acts of the defendant constituted the violation. * * * In this case, however, the problem is not difficult. For the duty was clear and precise, as were the place of performance and the place of refusal to perform; and the two places were identical." In note #14 of the decision the court lists cases "holding that when an omission to act is the crime, the venue is the jurisdictional locality where the act should have been performed * * *."

In Jones v. Pescor, 8 Cir., 1948, 169 F.2d 853, the defendant was outside the district at the time of the alleged Selective Service violations of failing to report, file questionnaire and advise of changes of address. The court said "Failure to comply with a regulation under the Selective Training and Service Act, or with an order of a local draft board having jurisdiction, *constitutes a crime at the place where the compliance must be made.*" At page 855. [Emphasis added.] See Shurin v. United States, 4 Cir., 1947, 164 F.2d 566, certiorari denied 333 U.S. 837, 68 S.Ct. 608, 92 L.Ed. 1121.

Had defendant been charged with failure to obey the order to report to the local boards, the venue would have been in the district or division of the local boards. We have held that the indictment alleges a failure to perform certain work and that the work was to have been performed in Los Angeles county. Venue was thereafter properly laid in the Southern district of California, even though there were refusals of defendants to perform any work, made at the location of the local boards.

### III.

### When does the Class I–O Registrant Exhaust the Administrative Process?

The local board is given continuing jurisdiction of registrants in Class I–O. After reporting to work they are reclassified I–W and it becomes the duty of the State Director of Selective Service to see that the registrants perform the work directed for the twenty-four month period specified. § 1660.31 of the Regulations.

Thus, we did not have a problem such as ascertaining the exact break line between civilian and military authority involved in Billings v. Truesdell, 1944, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917.

We need only consider whether the registrant has exhausted his administrative remedy, Falbo v. United States, 1944, 320 U.S. 549, 64 S.Ct. 346, 88 L. Ed. 305; Estep v. United States, 1946, 327 U.S. 114, 115–116, 66 S.Ct. 423, 90 L.Ed. 567; Williams v. United States, 1953, 203 F.2d 85, certiorari denied 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408, and is therefore in a position to raise the question of whether there is any evidence or "basis in fact" to support the classification given herein. Cox v. United States, 1947, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59.

Cases like Edwards v. United States,[11] 9 Cir., 1944, 145 F.2d 678 and United States v. Kirschenman,[12] D.C.S.D., 1946, 65 F.Supp. 153, do not concern us. In these cases, although the holding was that the conscientious objector must report to the work camp before he had exhausted his administrative procedures and was therefore entitled to challenge his classification, there existed a regulation[13] in each of the above cases, which

11. "We hold that the civil administration of the selective service act does not terminate until the selectee in IV–E arrives at the camp to which he is ordered in physical condition fit for the service." At page 680.

12. "* * * his acceptance as an assignee at the camp would not take place until

the camp director had formally executed the order referred to in the regulation." At page 155.

13. Edwards case; Regulation 653.11 in effect in May, 1942. Kirschenman case; Regulation 653.11 in effect on June 3, 1945.

required a further physical examination at the camp before acceptance for civilian work. In the Kirschenman case, supra, at page 155, the Regulations then in force also provided that "the acceptance of the assignee at the camp to which he has been assigned shall occur when the camp director completes and signs the Order to Report * * *."

Physical examination for Class I–O registrants (as well as for those in I–A–O and I–A) are now conducted prior to order to report for work or induction pursuant to §§ 1628.10–1628.17 of the Regulations. Thus, the administrative procedure for a Class I–O registrant has been completed when he reports to the local board pursuant to an order to report for civilian work.

Reporting to the local board preparatory to departing for the performance of the work ordered,[14] is the "brink", Estep v. United States, supra, Williams v. United States, supra, to which the registrant in Class I–O must come before he may obtain a judicial review of his classification.

### IV.

### Constitutionality

The defendants contend that the order of the local board ordering them to perform civilian work, and §§ 1660.1 and 1660.20 [15] of the Regulations upon which the order is based, are "in conflict with the Act" and contend that the "work is not national or federal" as required by the Act. Related to this question are the further contentions that "the Act as construed and applied by the regulations and the order, calls for a private nonfederal labor draft * * * of services that are not * * * related to the national defense in violation of the Thirteenth Amendment of the United States Constitution," and "deprives the defendant of due process of law contrary to the Fifth Amendment to the Constitution." We treat the problems under the above heading.

■ There is no longer any question as to the constitutionality of the present Act. Richter v. United States, 9 Cir., 1950, 181 F.2d 591, certiorari denied 340 U.S. 892, 71 S.Ct. 199, 95 L.Ed. 647. "The privilege of a native-born objector to avoid bearing arms comes not from the Constitution but from the Acts of Congress", Tyrrell v. United States, 9 Cir., 1952, 200 F.2d 8, 13, certiorari denied 345 U.S. 910, 73 S.Ct. 646, 97 L. Ed. 1346. Butler v. Perry, 1916, 240 U. S. 328, 36 S.Ct. 258, 60 L.Ed. 672, demonstrates that the Thirteenth Amendment was neither intended to reduce the duties of our citizens nor to deprive the government of its war powers or its power to provide for the national defense. "The great purpose in view was liberty under the protection of effective government, not the destruction of the latter by depriving it of essential powers. * * *" 240 U.S. at page 333, 36 S.Ct. at page 259.

Cases under the former Act, because of the similarity of its provisions to the present one, are equally persuasive that the statute does not violate the constitution. Roodenko v. United States, 10 Cir., 1945, 147 F.2d 752, certiorari denied 324 U.S. 860, 65 S.Ct. 867, 89 L.Ed. 1418, rehearing denied 324 U.S. 891, 65 S.Ct. 1022, 89 L.Ed. 1438; Hopper v. United States, supra.

■ Recent decisions are in accord that Congress has the right to require conscientious objectors to perform civilian work in lieu of induction into the army, without violating constitutional provisions. United States v. Niles, D.C. Cal., 1954, 122 F.Supp. 382; United States v. Pomorski, D.C.Mich., 1954, 125 F.Supp. 68; United States v. Smith, D.

---

14. The duty of the registrant was both to report to the board and to proceed to perform the work ordered. Jeffries v. United States, 10 Cir., 1948, 169 F.2d 86.

15. § 1660.1 is headed "Definition of Appropriate Civilian Work."

§ 1660.20 is headed "Determination of Type of Civilian Work To Be Performed and Order by Local Board to Perform Such Work." Pertinent parts have been heretofore set out in the opinion.

C.Ill., 1954, 124 F.Supp. 406; United States v. Thomas, D.C.Ill., 1954, 124 F. Supp. 411.

Much of defendants' argument is devoted to the meaning of "civilian work contributing to the maintenance of the national health, * * *." It seems patent that the health of the people of the nation is a matter of national concern.[16] Such is the holding of the Niles, Pomorski, Smith and Thomas cases, supra. The basic philosophy of the state, as an organized entity for the purpose of government, teaches that the state must be able to defend itself from destruction. To that end its citizens must be well and able bodied. This is clearly a matter of national concern. In Roodenko v. United States, supra, 147 F.2d at page 755, the court observed that "The proper maintenance of * * * sanitation, health, and many other civilian activities are as essential to the successful prosecution of the war and as much a part of the war effort as the production of munitions of war and the arming and equipping of the military forces."

The statute, as applied by the regulations and orders to report for work, presents a dual consideration. Regulation § 1660.1 specifies as suitable civilian work, "Employment by * * * a state * * * or by a political subdivision thereof * * *." And the order to report for work specifies civilian work as an "institutional helper" at the "Los An-

geles County Department of Charities." This is the extent to which the statute has been applied on the record of these cases.

In a criminal case we may take judicial notice of state statutes. Thorton v. United States, 5 Cir., 1924, 2 F.2d 561, affirmed 271 U.S. 414, 46 S. Ct. 585, 70 L.Ed. 1013; United States v. Chaplin, D.C.Cal., 1944, 54 F.Supp. 926. Los Angeles County is a political division of the State of California by state statutes. California Government Code § 460, 23000, 23001, 23011, 23012, 23119. We may also take judicial notice of matters of common knowledge, see Greeson v. Imperial Irrigation District, 9 Cir., 1932, 59 F.2d 529, including the fact that Los Angeles County has a Department of Charities and that the department operates various institutions for the aged, sick, needy and infirm, including the Los Angeles County Hospital.

The words "institutional helper" clearly means one who helps or assists in an established institution of the Department of Charities. Based on the cases primarily cited, it is clear such work is "civilian work contributing to the maintenance of the national health, safety or interest * * *".

It is suggested that the work to be assigned might consist of polishing cuspidors in the corridor of a hospital. On this we can only speculate. The defendants may only attack the statute as actu-

---

16. Witness federal activities concerning health in Ch. 6A, Title 42, U.S.C.A.; and specifically § 241(d) providing for federal grants in aid to private and public institutions, including hospitals; § 244, Health conferences with state authorities; § 246, Grants and services to states; § 249, Medical care and treatment of seamen; Subchapter III of Ch. 6A, §§ 281–289c, 42 U.S.C.A., providing for the National Institutes for Cancer, Heart, Dental Research and Arthritis; § 291d, Federal appropriations for public and private hospitals. Witness the Social Security Act, Ch. 7, Title 42, U.S.C.A. and particularly Subchapter I, §§ 301–306, Grants to States for Old Age Assistance; Subchapter IV,

§§ 601–606, Grants to States for Aid to Dependent Children; Subchapter V, §§ 701–731, Grants to States for Maternal and Child Welfare; Subchapter X, §§ 1201–1206, Grants to States for Aid to the Blind; Subchapter XIV, §§ 1351–1355, Grants to States for Aid to the Permanently and Totally Disabled.

Note that under § 302, Title 42, U.S.C.A., old age assistance, after approval of a plan, is administered by the state. In California the administration of old age assistance has been delegated to the Counties, Welfare and Institutions Code, § 2022, under the supervision of the State Department of Social Welfare, Welfare and Institutions Code, §§ 2140–2141.

ally applied as of the present state of the record. But regardless of the work actually assigned, if it contributes to the maintenance of the national health, safety or interest, there is no constitutional infirmity in the statute. In a hospital for example, services and skills of all kinds and classes are required from the janitor or dishwasher, to the most highly skilled surgeon. Defendants' contentions are without merit.

■ "A presumption of regularity attaches to official proceedings and acts; it is a well settled rule that all necessary prerequisites to the validity of official action are presumed to have been complied with, and where the contrary is asserted it must be affirmatively shown." Koch v. United States, 4 Cir., 1945, 150 F.2d 762, 763, citing Lewis v. United States, 279 U.S. 63, 49 S.Ct. 257, 73 L. Ed. 615; Eaker v. United States, 10 Cir., 76 F.2d 267; Donahue v. United States, 9 Cir., 56 F.2d 94, and concluding, "In United States v. Fratrick, 7 Cir., 140 F.2d 5, the court applied this doctrine in a Selective Service case, observing that it could be relied upon to dispense with the necessity of introducing proof to establish compliance with the statute."

We do not consider whether the Los Angeles County Department of Charities actually participates in the handling of federal funds supplied to the states under federal law [17] though we think such facts could be developed by proper evidence. Nor do we consider whether the Los Angeles County Department of Charities and particularly the Los Angeles County General Hospital has received federal funds or assistance [17] although we believe that also could be ascertained.

### V.

### Posting Notice of Names of Advisors

■ Defendants contend that there was a failure by the local board to post the names of advisors to registrants [Reg. 1604.41 quoted supra]. The violation charged to defendants occurred in the fall of 1953 and the draft board proceedings of course antedated the violations. The defendants' showing here was that on "November 4, *1954*" no such notice was posted. Clearly there is no merit to the contention.

■ However, board members, clerks, registrars and an appeal agent were available to assist registrants. No showing was made for any requests for assistance which was refused. United States v. Dorn, D.C.Wis., 1954, 121 F. Supp. 171, held that where no appeal was taken for a classification, failure to post names of advisors was not an error constituting any defense to the criminal prosecution.

### VI.

### Defendants Guilty

■ A review of the draft board files of the three defendants show that each was classified I–O and no appeal was taken. Defendants therefore did not exhaust their administrative remedies and cannot now question their classification. Falbo v. United States, supra; Estep v. United States, supra; Williams v. United States, supra; Rowland v. United States, 9 Cir., 1953, 207 F.2d 621.

■ Each defendant by his questionnaire showed he was a full time civilian worker; each claimed he was studying for the Ministry under the guidance of Jehovah's Witnesses; each claimed, in answering his questionnaire, to be a conscientious objector to war, and both combatant and non-combatant participation; each filled out and signed the special form for conscientious objectors.

The court finds no error in the proceedings and there is a basis of fact for the classification. Cox v. United States, 1947, 332 U.S. 442, 68 S.Ct. 115, 92 L. Ed. 59. Defendants claimed to be conscientious objectors to war in all forms; they were classified as such in class I–O; they were ordered to perform suitable civilian work as I–O registrants and they

17. See note 16, supra.

have refused. We can only conclude that defendants are either, (1) also conscientiously opposed to assisting their government in matters concerning its national health, safety and interest, or (2) recognized no legal authority of their government over them. Neither alternative reflects any credit to them. The motions for judgment of acquittal are denied and the court finds each defendant guilty as charged.